Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700 / Facsimile: (415) 398-8704

Michael G. McLellan (admitted *pro hac vice*)
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: 202-337-8000/Facsimile: 202-337-8090

*Co-Lead Interim Counsel For Plaintiffs*

[Additional Counsel listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDSAY KAMAKAHI and JUSTINE LEVY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE; SOCIETY FOR ASSISTED REPRODUCTIVE TECHNOLOGY,<br><br>Defendants. | Case No. 3:11-CV-1781 JCS<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO STRIKE CLASS CERTIFICATION REPORT OF INSOO HYUN**<br><br>Date:  November 14, 2014<br>Time:  9:30 a.m.<br>Courtroom:  Courtroom G, 15th Floor<br>            455 Golden Gate Ave.<br>            San Francisco, CA 94102 |

## I. INTRODUCTION

Defendants' Opposition never argues that the Hyun Report's central, merits-based conclusion (*i.e.* that Defendants' overarching rules on donor compensation are "well justified on ethical, professional, and public policy grounds," Hyun ¶ 9) has any relevance to class certification, and it does not. Nor do they argue the topics on which Defendants asked Dr. Hyun to opine have such relevance.[1]

Instead, they argue the Report bears tangential and attenuated relevance to their economists' critique of Plaintiffs' "injury and damages" model, Opp. at 10, asserting it supports the conclusion that "physicians make individualized ethical decisions regarding egg donor compensation." Opp. at 2. Simultaneously, Defendants (1) agree that "Dr. Hyun is not qualified to testify as to the economic effect of ethical principles on donor compensation," Hyun Report at 7, and (2) affirmatively argue that Defendants' economic expert made all relevant arguments concerning those principles' purported effect on Plaintiffs' injury and damages model. Opp. at 5. Defendants fail to address, let along challenge, Plaintiffs' observation that the Hyun Report (which argues ASRM's rules surrounding compensation operate to prevent a cascade of increasing compensation) contradicts the central theory of Defendants' Opposition to class certification, which rests on their experts' claim that the Maximum Price Rules had no effect whatsoever. *See* Motion to Strike at 1.

Defendants bear the burden of showing the Hyun Report satisfies F.R.E. 702, *Cholakyan v. Mercedes-Benz USA*, 281 F.R.D. 534, 543(C.D. Cal.2012), and they fail to do so. Defendants never provide any explanation for their failure to ask Dr. Hyun to opine on the subject for which they offer his testimony, nor do they convincingly explain what additional benefit his merits-based report might provide on topics well within the comprehension of this Court. This, coupled with their multiple concessions that Dr. Hyun cannot opine on relevant questions, renders the Hyun Report an "unhelpful summary of evidence and legal conclusions regarding issues that are not currently before the Court," inappropriate for consideration at this stage. *Dobrosky v. Arthur J. Gallagher Serv. Co.*, 13-0646, 2014 U.S. Dist. LEXIS 106345, at *10 (C.D. Cal. July 30, 2014).

---

[1] Defendants requested Dr. Hyun "describe the ethical issues surrounding egg donor compensation for fertility treatment and to explain the purposes and value of having professional ethical guidelines in general, and in particular the purposes and value of the American Society for Reproductive Medicine ("ASRM") guidelines for egg donor compensation." Hyun Report, ¶4.

1   Moreover, Defendants' reply clarifies that even their attenuated relevance argument rests entirely
2   on a misrepresentation permeating their entire opposition to class certification.  As set forth in Plaintiffs'
3   Reply in support of class certification (and throughout the record), Plaintiffs do not challenge the
4   entirety of ASRM's rules concerning donor compensation, but instead  challenge only the "price
5   capping" provision that caps compensation at $5,000 without justification and $10,000 in all events.  *See*
6   Reply in Support of Class Certification at 1-2 & 20-21.  Plaintiffs ***do not*** challenge Defendants'
7   prohibitions on compensating donors for anything other than their "time, labor, inconvenience, and
8   discomfort," nor Defendants' prohibition on basing compensation on the traits of the donor.  *Id.*  Yet
9   Defendants' opposition fails entirely to mention the price capping provision itself, instead solely arguing
10  the Hyun Report bears relevance to a but-for world in which ***all*** the rules are eliminated.  *See, e.g.*, Opp.
11  at 6-7.  Indeed, Defendants' example seeking to justify the Hyun Report speaks only to the removal of
12  the "time, labor, inconvenience, and discomfort" provision.  *Id*.  Defendants' failure to tie their theory of
13  relevance to arguments Plaintiffs actually advance further shows the irrelevance  of the Hyun Report.
14   These failings each independently suffice to strike the Hyun Report.  Indeed, even the isolated
15  portions of that Report that Defendants argue support their theory of relevance do so by seeking to
16  provide legal interpretation of the language contained in Defendants' rules – a type of written advocacy
17  properly performed by lawyers, not experts.   As such, this Court should grant Plaintiffs' Motion.

## II. ARGUMENT

### a. The Hyun Report is Improper Written Advocacy

20  Plaintiffs' Motion observed that the Hyun Report facially seeks to demonstrate that "the ASRM
21  Guidelines are well justified on ethical, professional, and public policy grounds," Motion to Strike
22  ("MTS") at 3 (quoting Hyun ¶9), and that the brunt of the report seeks both to justify those rules and to
23  argue for a specific interpretation of those rules. MTS at 3-4.  Defendants largely ignore Plaintiffs'
24  argument, instead making the conclusory argument that the Hyun Report is not "written advocacy"
25  because it purportedly addresses an issue relevant to commonality and predominance.  Opp. at 9-10.
26  Even if this were so – and it is not, *see* § II(b) – the Report would still be improper.  Defendants
27  claim the Hyun Report supports the idea that individualized ethical decisions affect donor compensation.
28  As pointed out in Plaintiffs' Motion, Defendants' "individualized" argument relies on a section of Dr.

2

1  Hyun's report that first argues that this Court should interpret the "specific wording of the Ethics
2  Committee's recommendation," Hyun ¶29, to "not set strict payment limits on donor compensation,"
3  ¶31.  From this interpretation, Defendants conclude that a variety of factors (which would persist
4  identically in the but-for world) should preclude class-wide proof of impact or damages (even as they
5  concede Dr. Hyun cannot opine on how these factors would affect impact or damages, Hyun Report at
6  ¶7).  In short, Defendants' relevance argument rests entirely on Dr. Hyun's interpretation of what
7  conduct the language of Defendants' rules permit.

8  Dr. Hyun's opinions on how this Court should read those rules serve as nothing more than legal
9  conclusions on a contested issue, as do his opinions on the propriety of ASRM's rules themselves.  Such
10 "written advocacy" is improper.  *In re First Am. Corp. Erisa Litig*., 07-1357, 2009 U.S. Dist. LEXIS
11 49141, at *3 (C.D. Cal. Apr. 2, 2009).

### b. The Hyun Report Is Irrelevant

As mentioned above, Defendants fail to challenge (and therefore concede) Plaintiffs' assertion that the central conclusion of the Hyun Report – *i.e.* that ASRM's rules are "well justified" on a variety of non-legal grounds – is irrelevant at this stage.  Instead, Defendants claim the Report bears relevance to a factual subject on which Dr. Hyun was not asked to opine and admittedly made no conclusions – the limited purpose of showing that "physicians make individualized ethical decisions regarding egg donor compensation," Opp. at 2, even as they concede that Dr. Hyun is incompetent to testify "on the 'economic effect' of these individual decisions." Opp. at 5.  Tellingly, Defendants later affirmatively argue that their expert economist made whatever relevant points exist on the effect of these purportedly varied ethical considerations on injury and damages suffered by the putative class.  Opp. at 5 ("Defendants' expert economist Dr. Thomas McCarthy explained how Plaintiffs' impact and damages model does not – and cannot – take into account numerous individualized issues, including ethical considerations, that may affect donor compensation.").

If Defendants intended for Dr. Hyun to opine on the question of whether any "variation in compensation" to egg donors is "derived in part from individualized ethical decisions," Opp. at 5 (citing Hyun Report), they should have requested he do so.  Instead, they requested he opine on a different subject entirely, *see* Hyun Report, ¶4, to support an irrelevant conclusion.  Hyun Report ¶9.  Under these

3
REPLY TO OPPOSITION TO MOTION TO STRIKE CLASS CERTIFICATION REPORT OF
INSOO HYUN
CASE NO. 3:11-CV-1781 JCS

1  circumstances, Defendants' claim that Dr. Hyun's report provides necessary expertise on an entirely different question rings hollow.

Even if this were not the case, the Hyun Report "does not provide the Court with any helpful information outside what is already in the factual and legal record." *Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*, 13-0646, 2014 U.S. Dist. LEXIS 106345,at *11 (C.D. Cal.July 30, 2014). Defendants claim their economist fully shows the purported effect of ethical considerations on injury and damages. Opp. at 5. Defendants do not articulate any additional relevant information Dr. Hyun provides, instead relying on vague assertions of relevance. *See, e.g.* Opp at 7 (arguing Dr. Hyun's report assists the Court in "understanding that this variation exists and the reason for the variation."). To the extent these purported ethical distinctions matter, this Court remains "capable of discerning the facts, law, and ethical considerations without the assistance of an expert." *Bridgeview Health Care Ctr. v. Clark*, 2012 U.S. Dist. LEXIS 184089, at *10 (N.D. Ill. Sept. 27, 2012).

Indeed, page 7 of Defendants' Opposition contains an example seeking to demonstrate the relevance of the ASRM Guidelines, but which does precisely the opposite. Defendants' example conjures up a but-for world that eliminates Defendants' prohibition on compensating donors for anything other than their "time, effort, and inconvenience," and argues Dr. Hyun's report is relevant to describing that but-for world. Even assuming this specious assumption is true, Plaintiffs have repeatedly confirmed they ***do not challenge*** the precept that donor compensation should be limited to "time, effort, and inconvenience," and that that restriction would continue apace in the but-for world. Rather, they challenge only the limited Maximum Price Rules themselves, *i.e.* the agreement that "sums of $5000 or more require justification and sums above $10,000 go beyond what is appropriate." Reply in Support of Class Certification, 1-2 & 20-21. Tellingly, the specific price range that Plaintiffs challenge makes no appearance anywhere in Defendants' example, or, indeed anywhere in their brief. Similarly, Dr. Hyun largely ignores it.

It is similarly telling that the vast majority of the Hyun Report does not address the question for which Defendants cite it. While Defendants claim to the contrary, it is overwhelmingly not a report concerning whatever individualized impact ethical considerations (including those not challenged by

1  Plaintiffs) might have on Plaintiffs' ability to prove antitrust impact; it is a report seeking to justify the
2  Maximum Price Rules on non-legal grounds, and is improper.

### c. Dr. Hyun Lacks Qualifications to Opine on the Topics For Which Defendants Offer Him

Defendants' claim that Dr. Hyun is qualified to testify as a "bioethicist" misses the point. He may be, but – again – defendants offer the Hyun Report solely to prove that "variations in compensation" to egg donors are "derived in part from individualized ethical decisions." Class Cert. Opp. at 5. Without some expertise that would enable him to show the economic effect those purportedly individualized ethical decisions might have on these "variations in compensation," Dr. Hyun is unqualified to opine on these issues. *See Tietsworth v. Sears, Roebuck & Co.*, 09-288, 2012 U.S. Dist. LEXIS 62956, at *23-24 (N.D. Cal.May 4, 2012) (expert electronic engineer qualified to testify as to type of product defect, but was not qualified to testify on consumer behavior related to that defect). Because Defendants concede he has no such expertise, Dr. Hyun lacks the qualifications to opine on the propositions for which Defendants present him. *See* Opp. at 5 (noting Dr. Hyun did not provide "testimony on the 'economic effects' of . . . independent ethical decisions."); *id.* at 7 (same).

Defendants also claim Plaintiffs suggest that "Dr. Hyun cannot serve as an expert at the class certification stage because he is not an economist." Plaintiffs make no such argument; rather, Plaintiffs show that Dr. Hyun's admitted inability to testify on the issues for which Defendants rely on him render him unqualified to testify. Defendants only argue Dr. Hyun's testimony is relevant to the question of "whether injury or damages are susceptible to proof on a classwide basis" – fundamentally questions of economics. *See* Opp. at 10. In each of the cases Defendants cite in which non-economists were qualified – none of which are antitrust cases, let alone address antitrust injury -- the experts were qualified to opine on the question for which they were presented.[2] Dr. Hyun is not, and his report should be stricken.

---

[2] In *In re Conagra Foods, Inc.*, CV-11-05379-MMM, 2014 U.S. Dist. LEXIS 116103 (C.D. Cal. Aug. 1, 2014), a consumer mislabeling case upon which Defendants rely, the court actually struck significant portions of an agriculture expert's testimony offered to support assertions outside of that expert's area of expertise, *id.* at 41, leaving intact those opinions relevant to the question of whether the defendants' manufacturing techniques rendered the challenged product inconsistent with its labeling. The experts in

### d. The Hyun Report is Unreliable

Defendants' assertion that Dr. Hyun's report is the "the product of reliable principles and methods" and "based on sufficient facts or data," Fed. R. Evid. 702, because it relies on various academic and historical materials and his own personal experience, misses the point. Hyun Report ¶9. An expert's report must rely on sufficient data and methodologies to support the propositions for which a party offers it. Defendants' entire theory of relevance is that Dr. Hyun's report sheds light on purported variances in compensation. Defendants bear the burden of demonstrating Dr. Hyun's methodologies shed light on that question; instead, they concede that Dr. Hyun does not address the economic effect of the ASRM Guidelines. Because Dr. Hyun does not address that question, the materials and methodologies of his report are by definition unreliable with respect to any relevant question.

### III.  CONCLUSION

Defendants' failure to argue that the central argument of the Hyun Report is relevant to class certification, coupled with their strained interpretation of that Report and their failure to tie that interpretation to any issue relevant to this case, justifies excluding it. It operates as nothing more than written advocacy, and written advocacy on the merits (rather than class certification) at that. This Court should accordingly strike it.

Dated: September 19, 2014                    Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, California 94111

---

the remainder of Defendants' cases offered relevant information on the question for which they were presented. *Tietsworth v. Sears, Roebuck & Co.*,2012 U.S. Dist. LEXIS 62956 (N.D. Cal. May 4, 2012) (sociologist qualified to opine on existence of common culture of sex stereotyping); *In re CitiMortgage, Inc. Home Affordable Modification Program ("HAMP") Litig.*, 2013 U.S. Dist. LEXIS 188283 (C.D. Cal. Oct. 7, 2013) ("Citi has established that Watson has experience in relevant portions of the mortgage industry, ***and that she is providing opinions within her established expertise***.") (emphasis added); *Rosenberg v. Renal Advantage, Inc.*, 2013 U.S. Dist. LEXIS 88468(S.D. Cal. June 24, 2013) (experienced registered dietician qualified to opine on responsibilities of registered dietician).

Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Douglas G. Thompson
dthompson@finkelsteinthompson.com
Michael G. McLellan
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

Bryan L. Clobes
bclobes@caffertyclobes.com
Ellen Meriwether
emeriwether@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Telephone: 215-864-2800
Facsimile: 215-864-2810

*Co-Lead Counsel For Plaintiffs*