UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY KAMAKAHI,<br><br>  Plaintiff,<br><br>  v.<br><br>AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE, et al.,<br><br>  Defendants. | Case No. 11-cv-01781-JCS<br><br>**ORDER GRANTING MOTION TO INTERVENE**<br><br>Re: Dkt. No. 176 |

## I.   INTRODUCTION

This is a class action on behalf of women who donated human eggs (or oocytes) through fertility clinics and donation agencies affiliated with Defendants, the American Society for Reproductive Medicine ("ASRM") and the Society for Assisted Reproductive Technologies ("SART").  Plaintiffs allege that Defendants' "ethical guidelines" restrict donor compensation and thus restrain trade in violation of the Sherman Act.  The Court previously granted Plaintiffs' Motion for Class Certification in part, certifying a Rule 23(c)(4) issue class to determine whether the guidelines violate the Sherman Act.  The Court declined to certify the issue of damages and—significantly for the purpose of the present motion—declined to certify a Rule 23(b)(2) class for injunctive relief because neither of the proposed class representatives had standing to seek an injunction.  Proposed Intervenors Chelsey Kimmel and Kristin Wells now move to intervene as plaintiffs, in order to seek injunctive relief on behalf of an anticipated subclass of donors who intend to donate again.  The Court finds the matter suitable for resolution without oral argument and **vacates the hearing scheduled for May 1, 2015.**  *See* Civ. L.R. 7-1(b).  **The case management conference set for the same day shall remain on calendar at 9:30 a.m.**  For the

reasons stated below, Proposed Intervenors' Motion is GRANTED.[1]

## II.   BACKGROUND

This Order assumes the parties' familiarity with the facts and history of this case, as set forth in more detail in the Court's previous Order. *See* Class Cert. Order (dkt. 174).[2] The background relevant to the present Motion is summarized as follows.

Defendants are professional organizations in the field of reproductive medicine. *Id.* at 2. Defendant SART counts a large number of fertility clinics among its members. *Id.* Plaintiffs Lindsay Kamakahi and Justine Levy represent a class of former egg donors challenging the provisions of Defendants' ethical guidelines that limit "appropriate" donor compensation to no more than $5,000 without justification, and no more than $10,000 with justification. *See id.* at 3−4. Fertility clinics that are members of SART agree to follow ASRM guidelines as a condition of membership. *Id.* at 3. SART also encourages egg donation agencies that recruit donors to follow the Guidelines, and has (at least at times) provided a list on its website of agencies that signed an agreement to do so. *Id.*

On February 3, 2015, the Court certified a plaintiffs' class pursuant to Rule 23(c)(4) to determine the issue of whether Defendants' compensation guidelines violate the Sherman Act, and bifurcated the issues of damages and injury-in-fact, reserving the question of how to adjudicate those issues until after the violation phase is complete. *See id.* at 30, 41−43, 46−47. The Court denied Plaintiffs' request to certify a Rule 23(b)(2) subclass of past donors who intended to donate again, because neither named plaintiff demonstrated any such intent. *Id.* at 43−46. Levy explicitly stated that she did not intend to donate again, and Kamakahi testified only that "[i]t's not impossible" that she would donate again. *Id.* at 44−45. The Court therefore held that Levy and Kamakahi could not represent the proposed subclass, because neither had Article III standing to seek injunctive relief, and neither was a member of the proposed subclass. *See id.* at 44−46 (citing, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

---

[1] All parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] *Kamakahi v. Am. Soc'y for Reproductive Med.*, __ F.R.D. __, No. 11-cv-01781-JCS, 2015 WL 510109 (N.D. Cal. Feb. 3, 2015).

United States District Court
Northern District of California

Defendants have petitioned the Ninth Circuit to review this Court's Class Certification Order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, and proceedings in this Court are currently stayed pending resolution of that petition. *See* Case Mgmt. Statement (dkt. 186) ¶ 4; *see generally Am. Soc'y for Reproductive Med. v. Kamakahi*, No. 15-80026 (9th Cir.).

Proposed Intervenors Chelsey Kimmel and Kristin Wells now move to intervene in order to seek injunctive relief. *See generally* Mot. (dkt. 176). Both Kimmel and Wells have submitted declarations stating that they have donated eggs in the past and intend to do so again. *See id.* Ex. 2 (Wells Decl.); *id.* Ex. 3 (Kimmel Decl.). Both have taken concrete steps to donate again within the next year. Wells Decl. ¶ 4; Kimmel Decl. ¶ 3. Wells has "notified two agencies . . . of [her] intent to donate AR Eggs again and signed forms relating to [her] next donation, including consent forms." Wells Decl. ¶ 4. Kimmel has similarly "notified the clinic of [her] intent to donate AR Eggs again and signed forms relating to [her] next donation, including a consent form and paperwork for blood testing." Kimmel Decl. ¶ 3. Neither Wells nor Kimmel intends for her next donation to be her last. *Id.* ¶ 5; Wells Decl. ¶ 6. The Proposed Class Action Complaint-in-Intervention, Mot. Ex. 1, is materially identical to the operative Consolidated Amended Complaint (dkt. 55). *See* Mot. at 7 & n.3.

Proposed Intervenors assert that they are entitled to intervention pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, because their Motion is timely, they have a direct and substantial interest that may be impaired if they are not permitted to intervene, and the existing Plaintiffs may not adequately represent Proposed Intervenors' interest. *See* Mot. at 5. Alternatively, if the Court determines that Rule 24(a) does not apply, Proposed Intervenors seek permissive intervention pursuant to Rule 24(b). *Id.* at 11−12. Proposed Intervenors note that the standard for intervention is generally permissive, and particularly so for absent class members. *See id.* at 3−5.

Defendants oppose intervention, arguing that Plaintiffs' counsel unduly delayed adding plaintiffs with standing to seek an injunction, that a delay would prejudice Defendants by requiring additional discovery and briefing of a second motion for class certification, and that Proposed Intervenors' interests are adequately represented to the extent that they are implicated by

3

this case. *See generally* Opp'n (dkt. 179).

## III. ANALYSIS

### A. Legal Standard

In order to establish a right to intervene under Rule 24(a)(2), a party must demonstrate that four elements are satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (citing *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)). The Ninth Circuit generally "construe[s] Rule 24(a) liberally in favor of potential intervenors," and "review is guided primarily by practical considerations, not technical distinctions." *Id.* at 818 (citations and internal quotation marks omitted). Even so, "[t]he party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Alternatively, under Rule 24(b), "[a]n applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citing *Nw. Forest Resource Council*, 82 F.3d at 839). If the party seeking to intervene meets those elements, the district court has broad discretion to grant or deny the motion, but "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*; *see also* Fed. R. Civ. P. 24(b)(3).

### B. The Court Declines to Reach the Parties' Rule 24(a) Arguments

The parties dispute whether Wells and Kimmel are entitled to intervention of right pursuant to Rule 24(a). That Rule often provides an absent class member with a right to intervene "if he can show the inadequacy of the representation of his interest by the representative parties

4

before the court." Fed. R. Civ. P. 24 advisory committee's note (1966 amendment); *see also Diaz v. Trust Territory of the Pac. Islands*, 876 F.2d 1401, 1405 n.1 (9th Cir. 1989). Here, however, Defendants make an interesting argument that Proposed Intervenors do not meet the Rule 24(a) elements because they have not identified any single interest that is both, on the one hand, inadequately represented, and on the other hand, subject to potential impairment.

There is no question that Proposed Intervenor's legal interest in challenging the validity of the compensation guidelines satisfies the second and third *Berg* elements, as both "a 'significantly protectable' interest relating to the property or transaction that is the subject of the action" and an interest that may be "impair[ed] or impede[d]" by an unfavorable "disposition of the action." *See Berg*, 268 F.3d at 817. Proposed Intervenors do not, however, argue that this interest is "not . . . adequately represented by the existing parties in the lawsuit," and thus cannot claim a right to intervention based on this interest. *See id.*

Proposed Intervenors' interest in obtaining injunctive relief raises a closer question. The Court's previous Order established that the existing Plaintiffs cannot adequately represent that interest. *See* Class Cert. Order at 43−46. It is not clear, however, that this interest meets the third *Berg* elements—potential impairment. If the present Motion were denied, the Court would have no occasion to address whether future donors are entitled to injunctive relief. Proposed Intervenors' interest in an injunction would of course be foreclosed if the compensation guidelines are found not to violate the Sherman Act, but as previously discussed, Plaintiffs Kamakahi and Levy adequately represent Proposed Intervenors' interest in that aspect of the analysis. And if the compensation guidelines are found impermissible, Proposed Intervenors would likely be free to pursue injunctive relief in a separate action. Proposed Intervenors contend that Defendants' reasoning on this issue is circular, and violates the spirit of Rule 24. *See generally* Reply (dkt. 181).

In light of the Court's decision to allow permissive intervention under Rule 24(b), however, the Court need not resolve the Rule 24(a) issue.

**C.    Wells and Kimmel May Intervene Pursuant to Rule 24(b)**

Of the three requirements for permissive intervention under Rule 24(b)—commonality,

5

timeliness, and jurisdiction, *see Donnelly*, 159 F.3d at 412—Defendants dispute only the timeliness of Proposed Intervenor's Motion. *See* Opp'n at 15. To briefly address the other two elements, the legality of the compensation guidelines is "a common question of law or fact with the main action," and the Court has federal question subject matter jurisdiction over Proposed Intervenors' claims pursuant to 28 U.S.C. § 1331 because they arise under the Sherman Act, 15 U.S.C. § 1, a federal law. *See Donnelly*, 159 F.3d at 412.

Despite Defendants' arguments to the contrary, the Court also finds the present Motion sufficiently timely to permit intervention. "Courts weigh three factors in determining whether a motion to intervene is timely: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Alisal Water*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). So long as a court properly evaluates these factors, "[t]imeliness is a flexible concept; its determination is left to the district court's discretion." *Id.*

### 1. The Stage of Proceedings

Proposed Intervenors concede that "this litigation is not in the early stages." Mot. at 6. This case was originally filed four years ago. However, "the mere lapse of time, without more, is not necessarily a bar to intervention," and "a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit." *Alisal Water*, 370 F.3d at 921. The proposed intervention does not meaningfully implicate any stage of this case before the recent class certification. To be entirely timely, Kimmel and Wells should have sought to intervene *before* that issue was adjudicated, but their present Motion is not so late as the age of this case alone might suggest. This factor weighs slightly against a finding of timeliness, but not strongly.

### 2. Prejudice to Other Parties

In the context of a timeliness analysis, prejudice is evaluated based on the difference between timely and untimely intervention—not based on the work Defendants[3] would need to do

---

[3] There is no suggestion that the existing Plaintiffs face any prejudice if the Motion is granted.

regardless of when Kimmel and Wells sought to intervene. *See Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) ("Moreover, the fact that the State of Hawaii is filing its Motion now, rather than earlier in the proceedings, does not cause prejudice . . . , since the practical result of its intervention—the filing of a petition for rehearing—would have occurred whenever the state joined the proceedings.") (citing *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1395 (9th Cir. 1992)).

Much of the prejudice that Defendants invoke is illusory—the proposed intervention, limited to seeking a Rule 23(b)(2) class, would not lead to relitigating issues such as the denial of Defendants' motion to dismiss or the denial of certification of a damages class. *See* Opp'n at 10−11 (listing actions taken thus far and asserting that "[p]ermitting intervention now would compel Defendants to repeat actions taken months, if not years, ago and require the Court to reconsider issues now resolved"). The actual work that will need to be done as a result of intervention is almost entirely the same work that would have been required if Proposed Intervenors had intervened earlier, or even if they had been parties from the outset: Defendants will need to take Proposed Intervenors' depositions and perhaps conduct other discovery limited to their personal capacity to serve as Rule 23(b)(2) subclass representatives.[4] That is not prejudice within the meaning of *Day*, because it results from the mere *fact* of intervention rather than from the *timing* of intervention. *See* 505 F.3d at 965.

Perhaps in some circumstances a defendant could invoke the delay caused by a post-denial-of-certification intervention as prejudicial, even if the actual work required would be the same as for an earlier intervention. Here, however, the case is already stayed pending resolution of Defendants' Rule 23(f) petition to the Ninth Circuit. Any added delay as a result of granting intervention is speculative and unlikely to be significant.

In the Court's view, the only real prejudice that Defendants face as a result of the *timing* of

---

[4] To the extent that Defendants' opposition to certifying a Rule 23(b)(2) subclass will encompass arguments that are *not* specific to Kimmel and Wells, such arguments should not require any discovery or analysis beyond what Defendants previously undertook to oppose Kamakahi and Levy's unsuccessful motion to certify a Rule 23(b)(2) class. Transposing any such arguments that the Court previously failed to reach to a new opposition brief is not significant prejudice.

Proposed Intervenors' Motion is that they may be required to appear at two class certification hearings instead of one. That is not significant prejudice, and even that overstates the relative harm that Defendants face, because a denial of the present Motion would not extinguish Proposed Intervenors' claims. Instead, denying the motion may require all parties—including Defendants—and the Court to participate in a separate parallel or subsequent action for injunctive relief. The Court finds that this factor strongly favors granting Kimmel and Wells permission to intervene.

### 3. Explanation for Delay

"Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation. *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). The parties differ as to whether this factor should be evaluated from the perspective of Kimmel and Wells themselves or of their counsel, who are also class counsel.

Proposed Intervenors argue that under the principle that absent class members have no "duty to take note of the suit or to exercise any responsibility with respect to it" until after "the existence and limits of the class have been established and notice of membership has been sent." Mot. at 8 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974)). The Supreme Court's decision in *American Pipe* dealt with whether prosecution of an ultimately uncertified putative class action tolls the statute of limitations for putative class members to bring claims in intervention after the denial of certification, but its reasoning is also persuasive in considering the Rule 24 timeliness of a motion to intervene after such a denial:

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. . . . [A] rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.

*Am. Pipe*, 414 U.S. at 553−54. By this logic, requiring future donors like Kimmel and Wells to evaluate Kamakahi and Levy's suitability as class representatives, and to preemptively intervene in anticipation that the Court would decline to certify the Rule 23(b)(2) subclass, would frustrate

the purpose of a class action.[5] Proposed Intervenors therefore argue that they were justified in not seeking intervention until after the Court held that Kamakahi and Levy could not represent the subclass.

Defendants, on the other hand, rely on authority imputing counsel's knowledge of the original class representatives' flaws to proposed intervenors. The only case Defendants cite for this principle from within the Ninth Circuit dealt with counsel's "knowledge of the dismissal of . . . claims," and did not go so far as imputing counsel's *anticipation* of a denial to a subsequent party. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2010 WL 3743532, at *3 (N.D. Cal. Sept. 17, 2010). If the Court follows that holding on the terms of that case, the present Motion is a reasonably diligent response to the Class Certification Order issued seventeen days earlier.

Authority from other circuits extends the principle further. *See, e.g.*, *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 827 (7th Cir. 2011) ("Intervention shouldn't be allowed just to give class action lawyers multiple bites at the certification apple, when they have chosen, as should have been obvious from the start, patently inappropriate candidates to be the class representatives.").[6] The rationale that attorneys who fail to select appropriate class representatives should not be given unwarranted do-overs is sound, and applies in the present case, where class counsel certainly should have known that Kamakahi and Levy lacked standing to seek an injunction at least by the time of their depositions. On the other hand, a doctrine that makes a party's ability to intervene dependent on retaining different counsel from the existing plaintiffs may, in some cases, create perverse incentives to forego the efficiency of shared counsel for parties whose interests are aligned.

Regardless, even if this factor weighs against intervention, it does not outweigh the lack of

---

[5] The comparison is not perfect. In *American Pipe*, a contrary rule would have foreclosed the putative class members' claims entirely, while the denial of Proposed Intervenors' Motion here would merely require them to file a separate action to pursue injunctive relief. But while such an outcome does not represent the same degree of injustice, the lost opportunity to efficiently resolve related claims together also undermines the purpose of the class action mechanism.

[6] Notably, the Seventh Circuit in *Randall* held that the district court was "justified in denying the motion to intervene," not that denial was required. *See Randall*, 637 F.3d at 827.

9

prejudice that the delay has caused to Defendants. As a practical matter, it makes little sense to foreclose a more efficient resolution of the overall case because class counsel made a legal error that they have now corrected, without significant prejudice to Defendants. *See Berg*, 268 F.3d at 818 ("[R]eview is guided primarily by practical considerations, not technical distinctions."). On balance, the Court therefore finds the present Motion sufficiently timely to warrant permissive intervention.

## IV. CONCLUSION

For the reasons stated above, Proposed Intervenors Kristin Wells and Chelsey Kimmel's Motion to Intervene is GRANTED pursuant to Rule 24(b). The parties should be prepared to discuss a schedule for Intervenors' anticipated motion to certify a Rule 23(b)(2) class, and any associated discovery, at the May 1, 2015 case management conference.

**IT IS SO ORDERED.**

Dated: April 27, 2015

JOSEPH C. SPERO
Chief Magistrate Judge

10