Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Michael G. McLellan (admitted *pro hac vice*)
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington DC, 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

Co-Lead Counsel for Plaintiffs

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY KAMAKAHI and JUSTINE LEVY, individually, and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE and SOCIETY FOR ASSISTED REPRODUCTIVE TECHNOLOGY. <br><br> Defendants. | Case No.  3:11-CV-1781 JCS <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR (1) PRELIMINARY APPROVAL OF SETTLEMENT; (2) CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES AND (3) APPROVAL OF CLASS NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> **Hon. Joseph C. Spero** <br> **Date:  March 4, 2016** <br> **Time:  9:30 a.m.** <br><br> **[Concurrently with this filing, the parties have filed a stipulation seeking a shortened February 12, 2016, 9:30 am hearing date, subject to Court approval]** <br><br> **Courtroom:  Courtroom G, 15th Floor** <br> **455 Golden Gate Ave.** <br> **San Francisco, CA 94102** |

**NOTICE OF MOTION AND MOTION:**

**PLEASE TAKE NOTICE THAT**, on February 12, 2015 at 9:30 am,[1] or such other time as the Court may order, Plaintiffs will and hereby do move the Honorable Joseph C. Spero, at San Francisco Courthouse, Courtroom G, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA, 94102, for an Order:

(1) Preliminary approving a settlement of this action;

(2) Amending the class definition of the class certified in this action on February 3, 2014 and preliminarily certifying the following class ("Settlement Class") for settlement purposes:

All women who sold human egg donor services for the purpose of supplying human eggs to be used for assisted fertility and reproductive purposes ("AR Eggs") within the United States and its territories at any time during the time period from April 12, 2007, to the present – and who intend to sell donor services in the future – to or through:  (1) any clinic that was/is, at the time of the donation, a member of SART; and/or (2) any AR Egg Agency that was/is, at the time of the donation, agreeing to follow the Challenged Ethics Report ("Settlement Class").

 and;

(3) approving the form and plan of class notice of the settlement.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all the pleadings and documents on file in this action, and such other matters as may be presented to the Court.


Dated: January 29, 2016

By: /s/ Rosemary M. Rivas
Rosemary M. Rivas

**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700

---

[1] Plaintiffs have noticed this motion for March 4, 2016, but have also stipulated, subject to Court approval, to a shortened hearing date of February 12, 2016 at 9:30 am.

Facsimile: (415) 398-8704

Douglas G. Thompson
dthompson@finkelsteinthompson.com
Michael G. McLellan
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

Bryan L. Clobes
bclobes@caffertyclobes.com
Ellen Meriwether
emeriwether@caffertyclobes.com
Nyran Rose Rasche
nrasche@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER
    & SPRENGEL LLP**
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Telephone: 215-864-2800
Facsimile: 215-864-2810

*Co-Lead Counsel For Plaintiffs*

## TABLE OF CONTENTS

I.    **INTRODUCTION AND BACKGROUND** ................................................. 1

II.   **HISTORY OF THE LITIGATION AND OF THE SETTLEMENT NEGOTIATIONS** ...... 2

    a.  History of the Case .......................................................................... 2

    b.  History of the Settlement ................................................................ 3

III.   **MATERIAL TERMS OF THE PROPOSED SETTLEMENT** .......................... 4

    a.  Class Benefits ................................................................................ 4

    b.  The Release .................................................................................... 6

    c.  Attorneys' Fees and Individual Plaintiffs' Damages Claims ................... 6

IV.   **THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT** ............................................................................. 7

    a.  Procedures and Standards for a Class Action Settlement ......................... 7

    b.  The Settlement Easily Meets the Standards for Preliminary Approval ............ 7

V.    **THIS COURT SHOULD AMEND ITS PRIOR CERTIFICATION ORDER TO CERTIFY THE SETTLEMENT CLASS** ............................................................. 9

    a.  The Court May Redefine the Issue Class to an Rule 23(b)(2) Class ................... 10

    b.  The Settlement Class Satisfies Rule 23(a)'s Numerosity and Commonality Requirements .. 11

    c.  The Settlement Class Representatives are Adequate and Typical ......................... 11

    d.  The Settlement Class Representatives Have Standing to Represent an Injunctive Class ....... 12

    e.  The Settlement Class Satisfies Rule 23(b)(2) ............................................ 14

        1.    Rule 23(b)(2) Standards ................................................................ 14

        2.    Rule 23(b)(2) Is Satisfied ............................................................... 15

VI.   **THIS COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE** ............................................................................. 15

    a.  Notice is Discretionary for Rule 23(b)(2) Classes ....................................... 15

    b.  The Dissemination Plan for the Notice is Appropriate ..................................... 16

    c.  The Content of the Notice is Appropriate ................................................. 18

VII.   **CONCLUSION** ................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ............................................. 9

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3rd Cir. 1994) ...................................... 14

*Bates v. UPS*, 511 F.3d 974 (9th Cir. 2007) ......................................................................... 13

*Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011) .................................... 13

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................................... 2

*Gatto v. Sentry Servs., Inc.*, No. 13 CIV. 5721, 2014 WL 7338721 (S.D.N.Y. Dec. 19, 2014).............. 19

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982).................................................. 9, 10

*Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501 (N.D. Cal. 2011) .............................. 14

*I.B. v. Facebook, Inc.*, 2015 U.S. Dist. LEXIS 29357 (N.D. Cal. Mar. 10, 2015) .................................. 13

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) .............................. 11

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)............................... 7, 8

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 2013 U.S. Dist. LEXIS 61250 (N.D. Cal. Mar. 29, 2013)...... 3

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015)................ 2, 3, 10, 11, 13, 15

*Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015) ................. 7, 8, 10, 13

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir. 1998)........................ 13

*Mazza v. American Honda Motor Corp.*, 666 F.3d 581 (9th Cir. 2012)................................... 11

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007)
.................................................................................................................................................. 13

*Nwabueze v. AT&T Inc.*, 2013 U.S. Dist. LEXIS 169270 (N.D. Cal. Nov. 27, 2013) ........................... 7

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ...................................................... 11, 14 , 15

*Pecover v. Elec. Arts Inc,*, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) ........................ 14

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ...................................................... 8

*Ries v. Ariz. Bevs. United States LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ............................... 13

*Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011)........................................ 19

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)................................................................ 12, 14

*Wehlage v. Evergreen at Arvin LLC,* No. 4:10-CV-05839-CW, 2012 WL 2568151 (N.D. Cal. June 25, 2012) ........................................................................................................................................... 19

*Weidenhamer v. Expedia, Inc.*, 2015 U.S. Dist. LEXIS 36142 (W.D. Wash. Mar. 23, 2015) ................. 13

*Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 147483 (N.D. Cal. Dec. 22, 2011) ........... 15

1

## I. INTRODUCTION AND BACKGROUND

Four years ago, plaintiff Lindsay Kamakahi filed this case to challenge under the Sherman Act provisions in Defendants' guidelines concerning egg donor compensation stating that "[t]otal payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate." ECF #1, ¶¶59-69. After years of hard-fought litigation, the completion of fact discovery, and extensive, arms-length negotiations, Plaintiffs have successfully negotiated a settlement, with the aid of a highly respected private mediator. *See* Exhibit 1 (settlement agreement) ("Agreement").[2] If the Court approves the settlement, Defendants will immediately remove the challenged provisions, and will agree to a variety of measures precluding repetition of their challenged conduct.

In return, members of the Settlement Class – which will include all women donating oocytes between April 11, 2007 and the present who have intention to donate again – will release Defendants from all claims for injunctive, declaratory, or other equitable relief related to compensation of donors of oocytes. However, the Settlement Class will ***not*** release any absent class members' claims for damages or other monetary relief.[3] In effect, the Settlement provides largely the same relief to Settlement Class members that they would receive if Plaintiffs prevailed on their pending motion to certify an injunctive class and if that Class then prevailed on the merits in this litigation. Given this Court's denial of Plaintiffs' motion for certification of a damages class, this is an excellent resolution of this complicated and risky case.

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs now request this Court approve the first step of the settlement process by (1) preliminarily approving the proposed settlements, (2) amending its class certification order to certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2), with Chelsey Kimmel and Kristen Wells as representatives of the Settlement Class, and (3) approving the proposed form and plan of notice and scheduling a final fairness hearing. Plaintiffs have attached a stipulated order ("Preliminary Approval Order") that accomplishes all of that.

The Proposed Settlement easily qualifies for preliminary approval. A non-collusive class action

---

[2] Plaintiffs support this motion with the Declaration of Michael G. Mclellan ("McLellan Dec."), submitted herewith. All references to exhibits herein refer to exhibits to the McLellan Dec.

[3] The Settlement resolves and releases all claims of the named Plaintiffs, including their individual damages claims.

settlement between experienced, informed parties warrants preliminary approval so long as it contains no obvious deficiencies – a low bar which the Settlement easily surpasses.  *See* §IV, *infra*.   In the litigation context, Plaintiffs have already demonstrated that they can meet the requirements for class certification specified in Rule 23(a).  And, as discussed below, plaintiffs Kimmel and Wells, each of whom have concrete plans to donate in the future, are appropriate representatives for a proposed settlement class to be certified under Rule 23(b)(2). *See* § V, *infra*.  Finally, the proposed form and plan of notice is fully consistent with all the requirements of Rule 23, and constitutes the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c).  *See* § VI, *infra*.

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The Settlement serves this interest admirably, and this Court should enter the Preliminary Approval Order submitted herewith.

## II.    HISTORY OF THE LITIGATION AND OF THE SETTLEMENT NEGOTIATIONS

### a.  History of the Case

This case asserts antitrust claims on behalf of women providing human eggs for reproductive services and alleges "that Defendants' guidelines regarding 'appropriate' compensation for egg donors constitute a horizontal price fixing agreement in violation of Section 1 of the Sherman Act." *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 170 (N.D. Cal. 2015).[4]  Lindsay Kamakahi, through her counsel at Finkelstein Thompson LLP and Cafferty Clobes Meriwether & Sprengel LLP ("Co-Lead Counsel") filed the initial complaint in this matter in April, 2011, following a lengthy proprietary inspection of its novel facts and the law surrounding them.  *See* McLellan Dec. at ¶4.[5]

Since then, this litigation – which, unlike many antitrust class actions, was not precipitated by nor prosecuted alongside a government action – has been hard-fought by both sides.  McLellan Dec., ¶¶

---

[4] At present, the challenged provisions are memorialized in a 2007 report from Defendant ASRM's Ethics Committee titled "Financial compensation of oocyte donors" which provides in pertinent part that "[t]otal payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate" and that "[a]lthough there is no consensus on the precise payment that oocyte donors should receive, at this time sums of $5,000 or more require justification and sums above $10,000 are not appropriate."  *See* Ex. 2.

[5] The McLellan Dec. recites the history of this case more fully than the summary provided in this brief.

4-13.  At the outset, Defendants moved to dismiss the case in its entirety.  *Id.* at ¶5.  After that motion was denied, *see Kamakahi v. Am. Soc'y for Reprod. Med.*, 2013 U.S. Dist. LEXIS 61250, at *14 (N.D. Cal. Mar. 29, 2013), the parties engaged in full-blown fact discovery over a period of 15 months (from July, 2013 to October, 2014).  McLellan Dec., ¶6.  That discovery was extensive and thorough: Co-Lead Counsel collected and reviewed over 200,000 pages of documents from Defendants, subpoenaed and negotiated discovery from over 20 third parties (primarily reproductive clinics or agencies), and took or defended multiple depositions.  *Id.* at ¶¶6-7.

Plaintiffs also filed their initial motion for class certification in April, 2014, supporting that motion with documentary and testimonial evidence elicited in discovery, as well as with the expert analysis of Dr. Hal Singer.  ECF # 119.  Defendants countered with analysis from two experts of their own.  ECF #126.  On February 3, 2015 this Court partially granted Plaintiffs' motion, certifying an issue class under Fed. R. Civ. P. 23(c)(4)(A) to determine if the challenged rules violated the Sherman Act, but denying Plaintiffs' motion for certification of a damages and injunctive class.[6]  *Kamakahi*, 305 F.R.D. at 164.  With respect to the injunctive class, the Court concluded that because neither class representative had concrete plans to donate eggs again in the future, neither had standing to seek injunctive relief.  *Id.* at 194-95.  However, the Court later granted plaintiffs Chelsey Kimmel and Kristen Wells leave to intervene to seek appointment as injunctive representatives.  ECF #187.  Plaintiffs then renewed their motion for injunctive certification, ECF #195, and Defendants took discovery of the new representatives.  McLellan Dec., ¶13.  After the parties fully briefed injunctive certification, the parties reached this settlement.  *Id.* at ¶14.

**b.  History of the Settlement**

The Settlement resulted from arms-length, hard fought negotiations that lasted over a year. While cordial and professional, the negotiations were, at all times, vigorous discussions in which counsel represented their clients' interests zealously.

While the parties had sporadically discussed settlement throughout the course of this litigation

---

[6] Plaintiffs successfully resisted Defendants' petition to the Ninth Circuit, pursuant to Fed. R. Civ. P. 23(f), for interlocutory review.  *See Kamakahi v. American Society for Reproductive Medicine*, Order, Case No. 15-80026 (9th Cir. May 12, 2015).

(including on multiple Court-scheduled ADR calls), those discussions were largely abstract until November, 2014, after completion of fact discovery and briefing on Plaintiffs' initial motion for class certification. McLellan Dec., ¶16. At that time, the parties began meaningful (albeit very preliminary) discussions concerning the potential for settlement, as well as the terms of any settlement. *Id.* at ¶17. Over the following year, the parties exchanged correspondence and engaged in extensive, arms-length discussions, via telephone and in person, regarding a potential settlement. *Id.* at ¶18. Topics discussed included its terms, the definition of any settlement class, what notice would be given to the settlement class, the scope of any release, and a variety of other issues. *Id.* at ¶19. In light of this Court's denial of certification of a damages class, the parties' discussions focused on a settlement that would provide significant prospective relief to the Class in the form of rule changes, while leaving intact each Class Member's ability to pursue monetary claims. *Id.*

By fall of 2015, the parties were generally in agreement on the scope of Class relief, but disagreed sharply on the amount of attorneys' fees and expenses to be paid to Class Counsel in exchange for their services. *Id.* at ¶20. The parties accordingly engaged the services of mediator Nancy Lesser, who, on November 22, 2015, conducted a single-day mediation limited to the issue of fees, at the conclusion of which the parties executed a term sheet containing the material terms of the settlement, including an agreement on fees. *Id.* at ¶21. That term sheet ultimately served as the foundation for the Settlement Agreement, which the parties negotiated over the following months and executed on January 29, 2016. *Id.* at ¶22.

## III.    MATERIAL TERMS OF THE PROPOSED SETTLEMENT

### a.    Class Benefits

The proposed settlement anticipates certification of the following class pursuant to Fed. R. Civ. P. 23(b)(2):

All women who sold human egg donor services for the purpose of supplying human eggs to be used for assisted fertility and reproductive purposes ("AR Eggs") within the United States and its territories at any time during the time period from April 12, 2007, to the present – and who intend to sell donor services in the future – to or through: (1) any clinic that was/is, at the time of the donation, a member of SART; and/or (2) any AR Egg

Agency that was/is, at the time of the donation, agreeing to follow the Challenged Ethics Report ("Settlement Class").

Agreement (Ex. 1), ¶¶27, 30-31.  It benefits the Settlement Class by requiring Defendants to do the following by the Effective Date of the Settlement:

1. ASRM will amend the challenged report concerning donor compensation by removing numbered paragraph 3 (which reads "[t]otal payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate.") and by removing the following language from page 4: "Although there is no consensus on the precise payment that oocyte donors should receive, at this time sums of $5,000 or more require justification and sums above $10,000 are not appropriate" and "A recent survey indicates that these sums are in line with the practice of most SART member clinics."  Exhibit 2 highlights the portions that will be removed.  Agreement (Ex.1), ¶ 53(a).

2. Defendants have agreed that any future guidance, advice, or commentary they or any of their various committees, board, working groups, or the like may offer concerning donor compensation will not set forth specific dollar amounts of recommended or required levels or ranges of compensation.  *Id.* at ¶53(b).[7]

3. SART will not require as a condition of membership that any clinic include any language on a clinic's website or in any clinic advertising or other materials specifying any limits on dollar amounts paid to donors.  *Id.* at ¶ 53(c).

4. Should SART include on its website a list of agencies that follow ASRM practice and ethical guidelines, SART will not require, as a condition of listing, that any donor agency include on the agency's website or in its advertising any language specifying any limits on dollar amounts paid to donors.  *Id.* at ¶ 53(d).

---

[7] The Agreement also provides that "Nothing in this Agreement shall be deemed to prevent or preclude any individual board member of ASRM or SART, any individual member of ASRM's Ethics Committee or any individual member of any ASRM or SART committee, working group or the like from publicly or privately expressing an opinion on the amount of compensation that can or should be paid by any clinic or donor agency for Donor Services."  Agreement, ¶53(b).  This clarifies that an individual SART member will not violate the Agreement through unilateral expression of an opinion.

Thus, the Settlement provides the Class with much the same relief it would have received had Plaintiffs successfully certified the Injunctive Class over Defendants' opposition, and then prevailed on the merits of their claims.

### b. The Release

If the Settlement becomes final, Class Members will release Defendants, SART-member clinics, and affiliates from all Class Members' claims for injunctive, declaratory or any other form of equitable relief related to donor compensation and brought under antitrust or similar laws.  Agreement (Ex. 1), ¶¶ 20, 39-41.  However, the Settlement explicitly carves out, and does not release, any claims involving negligence, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, or similar claims.  *Id.*, ¶ 20.

Notably, because the Settlement does not provide Class Members with monetary relief, it does not release any absent Class Members' claims for damages or monetary relief.  Agreement (Ex. 1), ¶20. ("Released Class Claims do not include any claims for damages or monetary relief, claims for costs, expenses, penalties or attorneys' fees in connection with suits for damages or monetary relief.").  If any Class Member other than the named plaintiffs wishes to pursue such claims, she will retain the right to do so under the Settlement.

### c. Attorneys' Fees and Individual Plaintiffs' Damages Claims

The Settlement provides that Defendants will pay a total of $1.5 million to compensate Class Counsel for attorneys' fees and costs incurred in bringing the settlement about, and that Defendants will separately pay the costs of notice to the class (up to $150,000).  Agreement (Ex. 1), ¶¶26, 48.  As Class Counsel incurred over $3 million in lodestar and $500,000 in expenses prosecuting this case, this significantly discounts their recovery.  McLellan Dec., ¶ 15.

The Settlement also provides that the individual named plaintiffs will receive $20,000 collectively, which will be distributed equally (i.e. $5,000 apiece) to compensate them for the release of their damages claims.  Agreement (Ex. 1), ¶¶47.  While, under the Settlement Agreement, absent class members do not release their individual damages claims, the named plaintiffs do release those claims, and thus, the $5000 payment is consideration for that release.  *Id.* at ¶¶ 21, 42-44.

Because the Settlement does not provide monetary relief, neither of the payments will reduce the

6

Class' recovery.  Similarly, any modification of the request for attorneys' fees and expenses will not affect the enforceability of the Settlement Agreement.  The Notice fully discloses all terms related to the benefits to the Class, the scope of the Release, attorneys' fees and expenses, and the individual plaintiffs' recoveries.  *See* §VI, *infra*.

## IV.   THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### a.   Procedures and Standards for a Class Action Settlement

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of class action settlements.  "Court approval requires a two-step process: (1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing." *Nwabueze v. AT&T Inc*., 2013 U.S. Dist. LEXIS 169270 (N.D. Cal. Nov. 27, 2013).  Here, Plaintiffs move for the first of these: an Order preliminarily approving the settlement.

In deciding on preliminary approval, the court determines whether the proposed settlement warrants consideration by members of the class and a later, full examination by the court at a final approval hearing. Manual for Complex Litigation (Fourth) § 13.14 at 173.  This does not require the Court to perform a full-blown analysis of the settlement, but rather merely to determine whether the settlement falls "within the range of possible approval."  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, at *18 (N.D. Cal. Mar. 18, 2015) (citations omitted).  "In other words, preliminary approval of a settlement has both a procedural and a substantive component."  *Tableware*, 484 F. Supp. 2d at 1080.

### b.   The Settlement Easily Meets the Standards for Preliminary Approval

The Settlement easily satisfies both the procedural and substantive components for preliminary approval.

First, it is the product of hard-fought, non-collusive negotiations spanning over a year, primarily

7

conducted after the close of fact discovery.  By the time the parties executed the term sheet, they had fully litigated one motion for certification and briefed a second, articulated their positions on liability and the central issues in dispute, and were preparing to proceed to expert merits discovery.

Moreover, when considering a proposed settlement, "the value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Here, counsel for both sides are well versed in class actions and antitrust litigation[8] and are fully capable of weighing the facts, law, and risks of continued litigation.  Thus, "experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time." *Tableware*, 484 F. Supp. 2d at 1080.  No evidence suggests the Settlement is collusive and, indeed, the extensive negotiation process would disprove any such claim.

Additionally, the "substantive fairness and adequacy of the settlement confirms this view of the fair procedures used to reach the settlement." *Tableware*, 484 F. Supp. 2d at 1080.  Because this Court denied Plaintiffs' initial motion for certification of a damages class, Class Counsel's ability to obtain a classwide monetary recovery at trial faced obvious and severe obstacles.  *See Lilly*, 2015 U.S. Dist. LEXIS 34498, at *22 (preliminarily approving injunctive settlement following denial of damages certification when "it is unclear whether Plaintiffs would have been able to certify a class for damages at a later stage of the litigation.").  However, the Settlement provides the Class virtually all the injunctive relief it sought in this case by eliminating the provisions this case challenged.  "In order to achieve this outcome in the absence of the settlement," Plaintiffs would first need to succeed on their motion to certify an injunctive class, and then "succeed in establishing liability--which Defendant[s] still contest[]--at trial." *Id.*, at *21.  And the "settlement protects the rights of class members by ensuring that class members retain their individual damages claims." *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015).

This case presents complex and hotly disputed issues.  The Settlement provides significant, meaningful, and immediate relief to the Class.  By any measure, it is sufficiently fair to warrant

---

[8] Indeed, this Court already found Class Counsel adequate to represent a certified class of egg donors.

NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 11-CV-1781 (JCS)

1 preliminary approval.

2 **V.    THIS COURT SHOULD AMEND ITS PRIOR CERTIFICATION ORDER TO CERTIFY**

3 **THE SETTLEMENT CLASS**

4 During the preliminary approval process, the Court must "determine whether the class is proper

5 for settlement purposes," and, if so, preliminarily certify it. *Amchem Products, Inc. v. Windsor*, 521 U.S.

6 591, 620 (1997). In conducting this analysis, "a district court need not inquire whether the case, if tried,

7 would present intractable management problems . . . for the proposal is that there be no trial." *Id.*

8 (citations omitted).

9 Plaintiffs request the Court to: (1) amend its February 3, 2014 class certification order to certify

10 the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2);[9] and (2) appoint Chelsey Kimmel and

11 Kristin Wells as Settlement Class Representatives.  The parties have agreed on the following definition

12 of the Settlement Class:

13 All women who sold human egg donor services for the purpose of supplying human eggs

14 to be used for assisted fertility and reproductive purposes ("AR Eggs") within the United

15 States and its territories at any time during the time period from April 12, 2007, to the

16 present – and who intend to sell donor services in the future – to or through:  (1) any

17 clinic that was/is, at the time of the donation, a member of SART; and/or (2) any AR Egg

18 Agency that was/is, at the time of the donation, agreeing to follow the Challenged Ethics

19 Report ("Settlement Class").

20 Agreement (Ex. 1), ¶ 27.  While a court retains broad authority to modify the definition of a

21 certified class, *see* § V(a), *infra*, the modified class should also be suitable for certification under Fed. R.

22 Civ. P. 23.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Thus, to support certification,

23 a court must find each of Fed. R. Civ. P. 23(a)'s requirements (*i.e.* numerosity, commonality, typicality,

24 and adequacy of representation) satisfied.  In addition, the party seeking certification must show that the

25 proposed class satisfies "one of the subsections of Rule 23(b)" – here, 23(b)(2), which "permits

26 certification where 'the party opposing the class has acted or refused to act on grounds that apply

27

28 [9] Under Rule 23(c)(1)(C), the Court may alter or amend a class certification order at any time
before final judgment.

NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 11-CV-1781 (JCS)

generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Kamakahi*, 305 F.R.D. at 175. (quoting Fed. R. Civ. P. 23(b)(2)). The Settlement Class easily meets this standard.

### a. The Court May Redefine the Issue Class to an Rule 23(b)(2) Class

The Settlement is contingent on this Court amending its order certifying the 23(c)(4) issue class to replace that class with the Settlement Class.  Agreement (Ex. 1), ¶55. Fed. R. Civ. P. 23(c)(1)(C) grants the Court that authority; under that Rule, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, 'is inherently tentative.'" *Gen. Tel. Co. of the Sw.*, 457 U.S. at 160.

Courts commonly modify class definitions at the settlement stage.  Indeed, in *Lilly*, 2015 U.S. Dist. LEXIS 34498, Judge Tigar of this District recently followed the practice requested here by certifying a liability-only litigation class pursuant to Fed. R. Civ. P. 23(c)(4), then later amending the class definition to a 23(b)(2) injunctive class when the case settled.[10]

Here, because the settlement provides for prospective relief requiring defendants to modify their compensation guidelines and practices going forward, the parties seek to redefine the certified class so that it will include only those that will benefit from the relief – *i.e.* past donors who intend to donate again.  This redefinition is eminently sensible, and will not impact the rights of any member of the issue class.  Moreover, because the parties have not yet issued notice of the Rule 23(c)(4) class, the notice ultimately issued will describe a certified Rule 23(b)(2) class, ensuring there will be no confusion.

---

[10] *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 39 (1st Cir. 2009) (affirming settlement where previously-certified class was expanded for purposes of settlement); *Beck-Ellman v. Kaz USA, Inc.*, 2013 U.S. Dist. LEXIS 60182, at *24 (S.D. Cal. Jan. 7, 2013) ("The Court grants the parties' joint request to modify the certified class definition pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) in accordance with the terms of the Settlement Agreement."); *Medearis v. Or. Teamster Emplrs. Trust*, 2009 U.S. Dist. LEXIS 53453, at *4 (D. Or. June 19, 2009) (approving settlement where "the parties modified the class definition" of certified class); *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 473 (E.D. Pa. 2007) (approving settlement that modifies class definition).

1

2

### b. The Settlement Class Satisfies Rule 23(a)'s Numerosity and Commonality Requirements

3

This Court has already found that Plaintiffs adequately demonstrated the numerosity requirement

4    of Rule 23(a)(1). As it stated in its opinion, "courts have routinely found the numerosity requirement

5    satisfied when the class comprises 40 or more members," and "the Court is satisfied that the proposed

6    class is sufficiently numerous." *Kamakahi*, 305 F.R.D. at 183.

7

Similarly, this Court has explicitly held that the commonality requirement of Rule 23(a)(2) has

8    been satisfied in this case.  Commonality is satisfied where "'the class members' claims 'depend upon a

9    common contention' such that 'determination of its truth or falsity will resolve an issue that is central to

10   the validity of each [claim] with one stroke.'"  *Id.* at 183 (quoting *Mazza v. American Honda Motor*

11   *Corp.*, 666 F.3d 581, 588 (9th Cir. 2012)).  In its earlier opinion, this Court observed that "'[c]ourts

12   consistently have held that the very nature of a conspiracy antitrust action compels a finding that

13   common questions of law and fact exist.'"  *Id.* (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D.

14   346, 351 (N.D. Cal. 2005)).  Consequently, it concluded that the question of "whether the Guidelines

15   violate the antitrust laws is a question common to all class members and susceptible to resolution by

16   common proof, and thus meets Rule 23(a)(2)'s commonality requirement."  *Id.*

17

The fact that Plaintiffs seek injunctive certification does not alter the conclusion that the

18   commonality requirement is satisfied.  *Cf. Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding

19   commonality and noting "although a presently existing risk may ultimately result in different future

20   harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the

21   same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a

22   substantial risk of serious harm.").  To the contrary, the fact that each of the class members will receive

23   the same relief under the Settlement only reinforces the conclusion that commonality exists.

24

### c. The Settlement Class Representatives are Adequate and Typical

25

"In assessing typicality under Rule 23(a)(3), courts consider 'whether other members have the

26   same or similar injury, whether the action is based on conduct which is not unique to the named

27   plaintiffs, and whether other class members have been injured by the same course of conduct.'"

28   *Kamakahi*, 305 F.R.D. at 183.  Here, this Court previously found that "this 'action is based on conduct

11

which is not unique to the named plaintiffs,' *i.e.*, the Guidelines limiting appropriate compensation, and that such conduct is applicable to the class as a whole." *Id.* (citations omitted).

Similarly, adequacy under Rule 23(a)(4), "which requires that the class representatives 'fairly and adequately protect the interests of the class,' is satisfied if the proposed representative plaintiffs do not have conflicts of interest with the proposed class and are represented by qualified and competent counsel." *Id.* Where – as here – proposed representatives have retained qualified and experienced counsel, already designated as Class Counsel for the certified issue class, and the representatives have no interests antagonistic to the interests of the Class, adequacy is easily satisfied. *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (adequacy satisfied when "the district court specifically found that the attorneys for the class representatives were well qualified and that the class representatives themselves were adequate because they were not antagonistic to the interests of the class and were 'interested and involved in obtaining relief.'").[11]

### d. The Settlement Class Representatives Have Standing to Represent an Injunctive Class

Because this Court previously ruled that the representatives of the 23(c)(4) class could not serve as representatives of an injunctive class,[12] Plaintiffs proffer Chelsey Kimmel and Kristen Wells as

---

[11] The named plaintiffs' settlement of their individual damages claims does not affect their adequacy: the Ninth Circuit recently affirmed approval of a settlement over objections that the representatives were inadequate because incentive payments of "$5,000 each, [were] significantly larger than the $12 each unnamed class member [would] receive." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015). Moreover, the $5,000 payments to the named plaintiffs are not incentive payments at all, but rather, are appropriate compensation for the release of damages claims that the members of the Settlement Class are not releasing. In *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008), Judge Henderson found a class representative receiving $125,000 to settle her non-class claims adequate as there was no evidence she "did, in fact, fail to evaluate the settlement, sacrifice the interests of absent class members to her own, or accept an unfair settlement." *Id.* at *18. Finally, the payments to the named plaintiffs will not reduce the class recovery because that recovery is nonmonetary. *Lilly*, 2015 U.S. Dist. LEXIS 58451, at *19 ("The Court also notes that the incentive awards to named Plaintiffs in this case will not reduce class recovery, as the classwide settlement is for injunctive relief only")

[12] This decision was not based on any finding that Plaintiffs could not satisfy Rule 23(b)(2), but was rather based on its conclusion that "neither named plaintiff has standing to seek an injunction" because neither demonstrated concrete plans to donate again in the future. *Kamakahi*, 305 F.R.D. at 195.

12

1   representatives of the Settlement Class.

2        As this Court has already held, "[i]n order to establish standing to seek an injunction, a plaintiff

3   must face an injury that is 'actual or imminent, not conjectural or hypothetical.'"  *Kamakahi*, 305 F.R.D.

4   at 195 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Proposed Representatives

5   meet this standard.  Both Ms. Kimmel and Ms. Wells have testified to "concrete plans" to provide donor

6   services in the future and have submitted evidence supporting these claims.  *See* ECF #195, Ex. A, ¶ 6;

7   Ex. B, ¶5; ECF # 202 at 3-4.  Absent the settlement, the challenged conduct would continue.  Such

8   stated intent shows the requisite threat of future harm to confer standing to represent a Rule 23(b)(2)

9   class.  *See Lilly*, 2015 U.S. Dist. LEXIS 34498, at *13 (in a mislabeling case, a "willingness to consider

10  a future purchase is sufficient" to confer standing to represent 23(b)(2) settlement class);[13] *see also*

11  *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc*., 140 F.3d 1228, 1237 (9th Cir. 1998) (active

12  market participants may seek injunctive relief under antitrust laws).

13        Proposed Representatives' standing to seek prospective relief obviates any need to show each

14  individual class member also has standing.   In *Bates v. UPS*, 511 F.3d 974 (9th Cir. 2007), the Ninth

15  Circuit, sitting *en banc,* addressed the standing requirements of a certified Rule 23(b)(2) class, observing

16  that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Id.*

17  at 985.  The Court further held that "[b]ecause [the named plaintiff] has standing to seek injunctive

18  relief, the entire federal class has standing."  *Id.* ("Thus, we consider only whether at least one named

19

20  ───────────────

21        [13] *See also I.B. v. Facebook, Inc*., 2015 U.S. Dist. LEXIS 29357, *17 (N.D. Cal. Mar. 10, 2015)
    (declarations attesting to intent to make future purchases sufficiently demonstrate injunctive standing);
22  *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 626 (C.D. Cal.
    2007) (injunctive standing present when class representatives submitted declarations attesting to future
23  intent and when challenged conduct could realistically recur); *see also Chapman v. Pier 1 Imps. (U.S.),
    Inc*., 631 F.3d 939, 949 (9th Cir. 2011) ("Demonstrating an intent to return to a noncompliant
24  accommodation is . . . one way for an injured plaintiff to establish Article III standing to pursue
    injunctive relief."); *Ries v. Ariz. Bevs. United States LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)
25  (plaintiffs' "stated intent to purchase in the future" satisfied requirements for standing); *Weidenhamer v.
    Expedia, Inc*., 2015 U.S. Dist. LEXIS 36142, *13-14 (W.D. Wash. Mar. 23, 2015) (standing when "[t]he
26  complaint includes allegations that Mr. Weidenhamer hoped to remain an Expedia customer, and his
    request for a 5% 'credit' rather than a refund also indicates an intent to purchase from Expedia in the
27  future.").

28

---

13

plaintiff satisfies the standing requirements for injunctive relief.").  But even if this were not so, since the proposed class only includes past donors intending future donations, each class member would possess standing for precisely the same reason as Proposed Representatives.

### e.   The Settlement Class Satisfies Rule 23(b)(2)

#### 1.   Rule 23(b)(2) Standards

As described above, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Parsons*, 754 F.3d at 674.  "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.* at 688. Thus, "Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class is plainly more permissive than 23(b)(3)'s requirement that questions common to the class predominate over individual issues." *Pecover v. Elec. Arts Inc,*, 2010 U.S. Dist. LEXIS 140632, at *40 (N.D. Cal. Dec. 21, 2010).  It is "'almost automatically satisfied in actions primarily seeking injunctive relief.'" *Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994)).

Moreover, it is settled that "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate" under 23(b)(2). *Walters*, 145 F.3d at 1047.[14]  This rule is "is consistent with the intention of the Advisory Committee, which stated in its Note to the 1966 amendment of Rule 23 that: 'Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.'" *Parsons*, 754 F.3d at 688 n.33  (quoting Wright & Miller, *Fed. Prac. & Proc. Civ.* at § 1775).

---

[14] *Walters* favorably cited to 7A Charles Alan Wright et al., Federal Practice & Procedure § 1775 (2d ed. 1986)'s observation that "[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."  45 F.3d at 1047.

1

2         **2.   Rule 23(b)(2) Is Satisfied**

3         This case challenges a single report alleged to violate a single law.  23(b)(2) is "unquestionably

4 satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or

practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688.

5         Similarly, the Settlement provides uniform relief by requiring Defendants to implement uniform

6 changes to their rules and practices.  Thus, "Plaintiffs satisfy the [23(b)(2)] requirement in this case

7 because the requested relief, and the relief to be provided pursuant to the Settlement Agreement . . .

8 would apply class-wide." *Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 147483 (N.D.

9 Cal. Dec. 22, 2011).[15]  Indeed, this Court's prior order certifying the issue class supports this conclusion,

10 as it found "that this 'action is based on conduct which is not unique to the named plaintiffs,' *i.e*, the

11 Guidelines limiting appropriate compensation, and that such conduct is applicable to the class as a

12 whole." *Kamakahi*, 305 F.R.D. at 183.  The Settlement requires Defendants to change this "conduct

13 which is not unique to the named plaintiffs," *id.*, satisfying Rule 23(b)(2) and warranting certification of

14 the Settlement Class.

15 **VI.    THIS COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
          CLASS NOTICE**

16

17         **a.   Notice is Discretionary for Rule 23(b)(2) Classes**

18         Because the Agreement provides for injunctive relief only and expressly preserves the rights of

19 the Settlement Class to bring claims for monetary relief against the Defendants, Agreement (Ex. 1), ¶20,

20

21 _____

         [15] *See also Jaffe*, 2008 U.S. Dist. LEXIS 12208, at *22 ("The parties have agreed upon extensive
22 injunctive relief which reasonable plaintiffs would have brought suit to obtain. Moreover, because
   Plaintiffs complain primarily of ongoing discriminatory practices, declaratory and injunctive relief
23 would be necessary and appropriate were Plaintiffs to succeed. Accordingly, the Court hereby
   CERTIFIES the injunctive-relief class under Rules 23(a) and 23(b)(2)."); *Kim v. Space Pencil, Inc*.,
24 2012 U.S. Dist. LEXIS 169922, at *11 (N.D. Cal. Nov. 28, 2012) ("This practice was applied generally
   to the class, and so the proposed final injunctive relief is appropriate respecting the class as a whole.");
25 *Carr v. Tadin, Inc*., 2014 U.S. Dist. LEXIS 179835, at *9 (S.D. Cal. Apr. 18, 2014) ("Here, the
   injunctive relief Defendant has agreed to provide—modifying the labeling and packaging of the
26 Products—is the primary relief Plaintiffs sought in their complaint, and also the primary relief provided
   for in the Settlement Agreement. . . . .Because injunctive relief is appropriate for the class as a whole,
27 and because an injunction is Plaintiff's primary remedy, certification under Rule 23(b)(2) is
   appropriate.").

28

notice to the class is not required.[16]   However, the Court has discretion to order notice to the members of a Rule 23(b)(2) class.  Fed. R. Civ. P. 23(c)(2)(A) (for any class certified under Rule 23(b)(2) the court "may direct appropriate notice to the class").  Here, the parties have agreed to provide notice to the Settlement Class and Defendants have agreed to fund that notice.  Agreement (Ex. 1), ¶¶36.

### b.  <u>The Dissemination Plan for the Notice is Appropriate</u>

Because Rule 23(b)(2) notice affords an opportunity to object but not an opportunity to opt out, the Advisory Committee notes to Rule 23 contemplate relaxed standards of dissemination:

> When the court does direct certification notice in a(b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the method of giving notice. Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all. Informal methods may prove effective.  A simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice. The court should consider the costs of notice in relation to the probable reach of inexpensive methods.

Fed. R. Civ. P. 23(c)(2) (2003 Advisory Committee Notes).

The parties' notice plan proposes three methods of dissemination.  First, the parties propose to publish notice in a variety of digital media in the manner described in the attached Proposed Notice Program.  *See* Exhibit 2 ("Proposed Notice Plan"), 18-22.  Banner and text ads with links to a website created specifically to provide information concerning the Settlement will be posted on websites likely

---

[16] Where a settlement class is certified pursuant to Rule 23(b)(2) and preserves class members' monetary claims, notice is not required. *Lilly*, 2015 WL 1248027, at *9 (finding notice was unnecessary for a (b)(2) settlement because "even if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members"); *Jermyn v. Best Buy Stores*, 2012 U.S. Dist. LEXIS 90289, at *32 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not required"); *Foti, et al. v. NCO Financial Systems*, 2008 U.S. Dist. LEXIS 16511, at *13 (S.D.N.Y. Feb. 19, 2008) ("Because the Agreement explicitly preserves the individual rights of class members to pursue statutory damages against the defendant, and because the relief in this Rule 23(b)(2) class is injunctive in nature, notice was not required.").

to reach the target demographic, *i.e.*, women of donating age (18-34).  *Id.* at 20-22; *see also* Exhibit 5 (contents of proposed advertisements).  Those websites will include not only Google, Yahoo and YouTube, all of which are heavily used by women aged 18-34, but also Facebook, which allows specific demographic targeting.  *Id.*  The digital media notice program alone is expected to reach more than 70% of women of donating age.  *Id.* at 28.  The notice administrator will also issue a press release announcing the settlement.  *Id.* at 26.

Second, Plaintiffs will seek to disseminate direct notice to more than 700 women who have self-identified as donors through a support and advocacy group known as We Are Egg Donors.[17]  Plaintiffs will also seek to post a link to the case website to the We Are Egg Donors public website – a website likely to be visited by many past, current and future donors who search the web for egg donor groups or information on donating eggs.

Third, to the parties will send a packet of materials to each SART member clinic.  The notice packet will include: (1) a letter from SART identifying the packet materials as important case-related documents and asking the clinics to follow the settlement administrator's instructions; (2) a poster notifying women who visit the clinic of the lawsuit and proposed settlement and explaining how to get more information; (3) instructions from the settlement administrator on displaying the poster and posting a link to the settlement website on the clinic's website; and (4) an affidavit for clinics to fill out when they have completed the settlement administrator's instructions.  *Id.* at 25; *see also* Exhibit 4 (contents of proposed packet).  The posters to be displayed at the clinics are designed to reach current donors – the vast majority of whom will visit SART-member clinics.[18]  Moreover, since approximately half of all

---

[17] The parties explored the possibility of providing direct mail or email notice to donors whose addresses are maintained by SART member clinics.  However, the decision to become a donor is intensely personal and often kept secret from friends and family members, and direct notice carries the possibility of exposing one's status as a donor.  Moreover, direct notice using clinic records would likely violate HIPAA, since the consent forms used by member clinics limit the circumstances under which the clinics may initiate contact with donors, and do not authorize the clinics to contact donors for purposes of providing class action notice.

[18] All donors must visit clinics for their labs, medical monitoring and retrieval procedures, regardless of whether they were matched with a recipient couple by the clinic or through an agency.  90% of the assisted reproduction clinics in the United States are members of SART.  *See* http://www.sart.org/What_is_SART/.

NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 11-CV-1781 (JCS)

women who donate eggs do so more than once,[19] the posters will be viewed by many women who have

donated before and intend to donate again in the future.

As noted, the digital media campaign alone is expected to reach more than 70% of women of

donating age. The clinic posters, clinic website links, and We Are Egg Donors website and notice

posting – all of which are targeted not just to women of donating age but to women who are donors

and/or have shown interest in donating in the future – will only increase the reach of the notice among

class members.  Thus, the notice program proposed here far exceeds the Advisory Committee's

standards for dissemination of Rule 23(b)(2) notice.

### c.  <u>The Content of the Notice is Appropriate</u>

The content of the proposed notice, which will be displayed in full on the settlement website and

emailed directly to certain self-identified egg donors, complies with this District's Procedural Guidance

for Class Action Settlements.  *See* Exhibit 6 (text of proposed notice).  For example, the notice clearly

explains the difference between the certified class and the settlement class, and includes language based

upon the suggested language found in paragraphs 3 and 5 of the Procedural Guidance.  *Id.*  Moreover,

although the notice content requirements of Rule 23(c)(2)(B) are not applicable here,[20] the proposed

notice is nonetheless consistent with those requirements.  The notice clearly and concisely explains the

nature of the action, provides information on the class definition and the class claims, issue and

defenses, states that a class member may enter an appearance through an attorney; and explains the

binding effect of a class judgment.[21]

---

[19] In two agency data sets and a clinic data set analyzed by Dr. Singer, nearly half of all donors did at least one repeat cycle, with many donors donating three times or more.  Singer Report, ECF #119 ex. 7, at ¶ 54, n. 70.

[20] Rule 23(c)(2)(B) applies expressly to "(b)(3) Classes," while Rule 23(c)(2)(A), which gives the Court discretion to direct "appropriate notice" to the class, applies expressly to "b(1) or (b)(2) Classes."  *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 n. 14 (1974) (Rule 23(c)(2) not applicable to declaratory judgment or injunctive relief class actions).

[21] The proposed notice complies with Rule 23(c)(2)(B)(i)-(iv) and (vii).  Subsections (v) and (vi) relate to opting out, which is generally not done in connection with settlements under Fed. R. Civ. P. 23(b)(2).  *See, e.g., Lightfoot v. D.C.*, 233 F.R.D. 28, 30 (D.D.C. 2006) (because injunctive relief "would apply equally to all Rule 23(b)(3) class members, individual class members are generally not permitted to opt-out of the class and pursue relief independently"); *Stewart v. Rubin*, 948 F. Supp. 1077, 1092-93 (D.D.C. 1996) ("[T]o avoid needless duplicative suits, courts should generally certify classes pursuant to Rule

1    The content of the proposed notice is thus clearly "appropriate" for a Rule 23(b)(2) class notice.

2    *See, e.g., Wehlage v. Evergreen at Arvin LLC,* No. 4:10-CV-05839-CW, 2012 WL 2568151, at *3 (N.D.

3    Cal. June 25, 2012) (notice complies with Rule 23(c)(2)(A) where it "is appropriate under the

4    circumstances, provides individual notice to all Class Members who can be identified through a

5    reasonable effort, and is reasonably calculated under all the circumstances to apprise the Class members

6    of the pendency of this action, the terms of the Settlement, and the right to object to the Settlement");

7    *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (notice was appropriate under

8    Rule 23(c)(2)(A) where, as here, it "clearly provided the nature of the action, the definition of the

9    Settlement Class, the terms of the settlement, the class members' options, including the fact that they

10   could not exclude themselves, the claims, defenses, and 25, and the procedures surrounding the

11   settlement;" "Class members were further provided with the date of the fairness hearing and were given

12   the opportunity to object to the settlement, which was described in clear terms;" and "[t]he scope of the

13   class and effect of the Court's potential approval of the settlement were clearly explained to the

14   recipients of the notice"); *Gatto v. Sentry Servs., Inc.*, No. 13 CIV 5721, 2014 WL 7338721, at *4

15   (S.D.N.Y. Dec. 19, 2014) (notice was appropriate under Rule 23(c)(2)(a) where, as here, it included: "1)

16   a comprehensive summary of the Settlement Agreement's terms; (2) notice of Lead Counsel's intent to

17   request attorneys' fees ...; and (3) detailed information about the Released Claims" and also provided

18   "information regarding the public fairness hearing,  . . . class members' rights to object (and deadlines

19   and procedures for objecting), and the procedure to follow to receive additional information") (citation

20   omitted).

21   In sum, although notice is not required at all in this case, the Court has discretion to order

22   appropriate notice to the class under Rule 23(c)(2)(A).  Both the proposed methods of dissemination and

23   the content of the proposed notice are clearly appropriate under the circumstances.

26   23(b)(2) when the class members are seeking injunctive relief and, correspondingly, not allow class

27   members to opt out.").

1

VII.    **CONCLUSION**

2

3        The Settlement is an excellent resolution of this case. Plaintiffs respectfully request the court to

4    enter the proposed order submitted herewith, preliminarily approving the settlement and setting a date

5    for a final approval hearing, amending its prior certification order to certify the Settlement Class,

6    approving the plan and form of notice and permitting dissemination of notice to the class as provided

7    therein.

8    Dated: January 29, 2016

9                                          By: /s/ Rosemary M. Rivas
                                               Rosemary M. Rivas

10                                         **FINKELSTEIN THOMPSON LLP**
11                                         One California Street, Suite 900
                                           San Francisco, California 94111
12                                         Telephone: (415) 398-8700
                                           Facsimile: (415) 398-8704
13

14                                         Douglas G. Thompson
                                           dthompson@finkelsteinthompson.com
15                                         Michael G. McLellan
                                           mmclellan@finkelsteinthompson.com
16                                         **FINKELSTEIN THOMPSON LLP**
17                                         1077 30th Street NW, Suite 150
                                           Washington, DC 20007
18                                         Telephone: 202-337-8000
                                           Facsimile: 202-337-8090
19

20                                         Bryan L. Clobes
                                           bclobes@caffertyclobes.com
21                                         Ellen Meriwether
                                           emeriwether@caffertyclobes.com
22                                         **CAFFERTY CLOBES MERIWETHER**
23                                         **  & SPRENGEL LLP**
                                           1101 Market Street, Suite 2650
24                                         Philadelphia, PA 19107
                                           Telephone: 215-864-2800
25                                         Facsimile: 215-864-2810

26                                         *Co-Lead Counsel for Plaintiffs*

27

28