Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Michael G. McLellan (admitted *pro hac vice*)
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*Co-Lead Counsel for Plaintiffs*

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY KAMAKAHI and JUSTINE LEVY, individually, and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE and SOCIETY FOR ASSISTED REPRODUCTIVE TECHNOLOGY.<br><br>        Defendants. | Case No.  3:11-CV-1781 JCS<br><br>**DECLARATION OF MICHAEL G. MCLELLAN IN SUPPORT OF SUPPLEMENT TO UNOPPOSED MOTION FOR (1) PRELIMINARY APPROVAL OF SETTLEMENT; (2) CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES AND (3) APPROVAL OF CLASS NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

I, Michael G. McLellan, declare as follows:

1.      I am an attorney duly licensed by the District of Columbia and admitted *pro hac vice* in this case to practice before this Court. I am a partner with the law firm Finkelstein Thompson LLP, who, along with the law firm of Cafferty Clobes Meriwether & Sprengel LLP, serves as co-lead counsel in this action.  This declaration is based on my own personal knowledge, and if called upon to do so, I could and would testify competently to the facts contained herein   I make this Declaration in support of Plaintiffs' supplement to their motion ("Motion") for (1) Preliminary Approval of Settlement; (2) Certification of Class for Settlement Purposes and (3) Approval of Class Notice.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of a fully executed stipulation of settlement in this matter, which the parties agree will replace the one executed and filed with this Court on January 29, 2016.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of a document showing the changes between **Exhibit 1** and the stipulation of settlement filed with this Court on January 29, 2016, which I produced using Microsoft Word's "Document Compare" feature.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the text of the settlement notice to be posted on the settlement web site, as contemplated by the Notice Plan.  The parties agree that Exhibit 3 will replace the text of the Notice submitted to this Court on January 29, 2016 as Exhibit 6 to the Declaration of Michael G. McLellan.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a document showing the changes between **Exhibit 3** and the Notice submitted to this Court on January 29, 2016 as Exhibit 6 to the Declaration of Michael G. McLellan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.  Executed this 18th day in Washington, D.C.

/s Michael G. McLellan
Michael G. McLellan

# EXHIBIT 1
## Settlement Agreement

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

This Stipulation and Agreement of Settlement ("Agreement") is made and entered into on January 29, 2016 ("Execution Date"), by and between American Society for Reproductive Medicine ("ASRM") and Society for Assisted Reproductive Technology ("SART") (together, the "Defendants"); Lindsay Kamakahi, Justine Levy, Chelsey Kimmel, and Kristin Wells (collectively, "Plaintiffs"), both individually and on behalf of a Settlement Class (as defined below);

### A.    RECITALS

WHEREAS, Plaintiffs are prosecuting the Action (as defined below) on their own behalf and on behalf of the putative Settlement Class (as defined below);

WHEREAS, Plaintiffs allege that they were injured and/or face threatened loss or damage as a result of Defendants' participation in an unlawful contract, combination, or conspiracy to fix, raise, maintain, or stabilize the price of Donor Services (as defined below) purchased within the United States and its territories in violation of Section 1 of the Sherman Act;

WHEREAS, Defendants deny Plaintiffs' allegations;

WHEREAS, the Court denied Plaintiffs Lindsay Kamakahi's and Justine Levy's request to certify a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and certified a class under Rule 23(c)(4) on February 3, 2015 [Dkt. 174];

WHEREAS, the Court granted Plaintiffs Chelsey Kimmel and Kristin Wells leave to intervene;

WHEREAS, Plaintiffs Chelsey Kimmel and Kristin Wells have filed a motion for certification of a class under Federal Rule of Civil Procedure 23(b)(2) and their motion remains pending;

-1-

WHEREAS, arms-length settlement negotiations have taken place between Co-Lead Class Counsel (as defined below) and counsel for Defendants, with the assistance of a nationally-recognized mediator, Nancy F. Lesser from Pax ADR;

WHEREAS, this Agreement has been reached as a result of those negotiations;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Defendants according to the terms set forth below is in the best interests of Plaintiffs and the putative Settlement Class because of the amendment of the Challenged Ethics Report (as defined below), the actions Defendants have agreed to take and not to take as of the Execution Date of this Agreement, and the payment of the Settlement Amount;

WHEREAS this Action will cease as to Defendants as of the Effective Date (as defined below) of this Agreement, except as necessary to enforce the Settlement or this Agreement; and

WHEREAS Defendants, despite their belief that they have good defenses to the claims alleged, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation;

NOW, THEREFORE, in consideration of the mutual promises, covenants, agreements, and releases set forth herein and for other good and valuable consideration, and intending to be legally bound, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed with prejudice as to Defendants and all other Released Parties (as defined below), subject to the approval of the Court on the following terms and conditions.

## B.   DEFINITIONS

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means the actions styled *Lindsay Kamakahi and Justine Levy v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology*,

No. 3:11-cv-1781 JCS (N.D. Cal.) and *Chelsey Kimmel and Kristin Wells v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology*, No. 3:11-cv-1781 JCS (N.D. Cal.).

2.      "ASRM Member" means any Person (as defined below) that is a member of ASRM or was a member of ASRM at any time during the Class Period (as defined below).

3.      "Challenged Ethics Report" means the American Society for Reproductive Medicine Ethics Committee Report Vol. 88, No. 22, titled "Financial compensation of oocyte donors," dated August 2007, and any subsequent drafts or versions of such report.

4.      "Class Claims" means the claims of the Settlement Class arising from (1) their donation of oocytes within the United States and its territories during the Class Period and (2) their intention to donate again in the future.

5.      "Co-Lead Class Counsel" for purposes of this Agreement shall refer to the law firms of Finkelstein Thompson LLP, 1077 30th St NW, Washington, D.C., 20007, and Cafferty Clobes Meriwether & Sprengel LLP, 1101 Market St. Suite 2650, Philadelphia, Pennsylvania 19107.

6.      "Class Period" means the period from and including April 12, 2007, to and including the Execution Date of this Agreement.

7.      "Class Representatives" means Chelsey Kimmel and Kristin Wells.

8.       "Court" means the United States District Court for the Northern District of California.

9.      "Defendants" means American Society for Reproductive Medicine ("ASRM") and Society for Assisted Reproductive Technology ("SART").

10.     "Defendants' Counsel" for purposes of this Agreement shall refer to the law firm of Hogan Lovells US LLP, 555 Thirteenth Street N.W., Washington, DC 20004.

11.     "Donor Services" means the supplying of human eggs to be used for assisted fertility and reproductive purposes and any activities engaged in or services provided in connection or association therewith.

12.     "Effective Date" means the first date by which all of the following events have occurred: (1) the Court has entered the Final Judgment and Order of Dismissal (as defined herein); (2) the time for appeal or to seek permission to appeal the Court's approval of this Agreement and entry of the Final Judgment and Order of Dismissal as described in clause (1) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651 shall be taken into account in determining the above-stated times.

13.     "Escrow Agent" means The Huntington National Bank, 1150 First Avenue, Suite 501, King of Prussia, PA  19406.

14.     "Execution Date" means the latest date on which this Agreement is signed by the Parties hereto.

15.     "Final Judgment and Order of Dismissal" means the order of the Court finally approving the Settlement set forth in this Agreement and dismissing the claims of Plaintiffs and all Settlement Class Members against Defendants, which is the same in all material respects to the Proposed Final Judgment and Order of Dismissal attached hereto as Exhibit A or as modified by agreement of the Parties.

16.     "Notice" means the Notice of Proposed Settlement of a Class Action to be provided to the Settlement Class in a manner acceptable to the Parties and approved by the Court.

17.     "Parties" means Plaintiffs and Defendants, collectively.

18.     "Person" means any individual or entity.

19.     "Plaintiffs" means Lindsay Kamakahi, Justine Levy, Chelsey Kimmel, and Kristin Wells and their respective predecessors, successors, agents, representatives, heirs, executors, administrators, and assigns.

20.     "Released Class Claims" means any and all claims, demands, actions, suits, and causes of action of any nature for injunctive, declaratory, or any other form of equitable relief, including, without limitation, costs, expenses, penalties, attorneys' fees—whether class, individual, or otherwise in nature—that the Class Representatives and Settlement Class Members have or ever had, up to the Effective Date of this Settlement, directly, representatively, derivatively, or in any other capacity against the Released Parties, whether known or unknown, suspected or unsuspected, including "Unknown Claims" as defined below, concerning or relating to the conduct alleged in the Action or the setting of any dollar amounts, limits or ranges of compensation for Donor Services.  Released Class Claims do not include any claims for damages or monetary relief, claims for costs, expenses, penalties or attorneys' fees in connection with suits for damages or monetary relief, or claims involving any negligence, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, or similar claim relating to Donor Services.

21.     "Released Individual Claims" means any and all claims, demands, actions, suits, and causes of action of any nature for damages and any other form of legal or monetary relief

and for injunctive, declaratory, and any other form of equitable relief, including, without limitation, costs, expenses, penalties, attorneys' fees—whether on behalf of a class, individual, or otherwise in nature—that Plaintiffs Lindsay Kamakahi, Justine Levy, Chelsey Kimmel and Kristin Wells have or ever had, up to the Effective Date of this Settlement, directly, representatively, derivatively, or in any other capacity against the Released Parties, whether known or unknown, suspected or unsuspected, including "Unknown Claims" as defined below, concerning or relating to the conduct alleged in the Action or the setting of any dollar amounts, limits or ranges of compensation for Donor Services.  Released Individual Claims do not include any claims for negligence, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, or similar claim relating to Donor Services.

22.     "Released Parties" includes, and shall refer jointly and severally, individually and collectively, to (1) Defendants, (2) SART-member Fertility Clinics, (3) ASRM members, and (4) each of their respective past and present predecessors, successors, heirs, executors, administrators, assigns, parents, subsidiaries, affiliates, divisions, departments, officers, directors, employees, agents, attorneys, representatives, insurers, and reinsurers.

23.     "Releasing Parties" shall refer jointly and severally, individually and collectively, to Plaintiffs, Settlement Class Members, their predecessors, successors, agents, representatives, heirs, executors, administrators, and assigns.

24.      "SART-member Fertility Clinic" means any fertility clinic that was, or has been, a member of SART at any point during the Class Period.

25.     "Settlement" means the settlement and related terms, Commitments (as specified in Section I), and Stipulations (as specified in Section I) between the Parties set forth in this Agreement.

26.     "Settlement Amount" means Twenty Thousand Dollars ($20,000) in United States currency in settlement of Plaintiffs' alleged individual damages claims and One Million Five Hundred Thousand Dollars ($1,500,000) in United States currency payable to Co-Lead Class Counsel to cover attorneys' fees and costs associated with their prosecution of the Action.

27.     "Settlement Class" means, for purposes of settlement under this Agreement, all women who sold human egg Donor Services for the purpose of supplying human eggs to be used for assisted fertility and reproductive purposes ("AR Eggs") within the United States and its territories at any time during the time period from April 12, 2007, to the present – and who intend to sell Donor Services in the future – to or through:  (1) any clinic that was/is, at the time of the donation, a member of SART; and/or (2) any AR Egg Agency that was/is, at the time of the donation, agreeing to follow the Challenged Ethics Report,

28.      "Settlement Class Member" means a Person who is a member of the Settlement Class.

29.     "Unknown Claims" means any and all Released Class Claims and Released Individual Claims against the Released Parties that a Releasing Party does not know or suspect to exist in his, her, or its favor as of the Effective Date, which if known by the Releasing Party might have affected his, her, or its decision(s) with respect to the Settlement.

### C.     Stipulation to Settlement Class Certification

30.     The parties to this Agreement hereby stipulate solely for purposes of this settlement that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are satisfied in this case, and, subject to Court approval, the Settlement Class (as defined above) shall be certified for Settlement purposes.

31.     The Parties' Agreement as to certification of the Settlement Class is only for purposes of effectuating this Settlement as to the Defendants and for no other purpose.

Defendants retain all objections, arguments and defenses with respect to any other request for class certification and reserve all rights to contest class certification if the settlement set forth in this Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Agreement is rescinded as provided herein, or if the settlement set forth in this Agreement otherwise fails to proceed for any other reason. The Parties acknowledge that that there has been no stipulation to a class or certification of a class for any purpose other than effectuating the Settlement, and that, if the Settlement set forth in this Agreement does not receive the Court's final approval, if the Court's final approval is reversed or vacated on appeal, if this Agreement is rescinded as provided herein, or if the Settlement set forth in this Agreement otherwise fails to close for any other reason, then this Agreement as to certification of the Settlement Class becomes null and void *ab initio*, and neither this Agreement nor any other Settlement-related statement may be cited in support of an argument for certifying a class related to this Action.

### D.  Approval of this Agreement and Dismissal of Action

32.     The Parties shall use all reasonable efforts to effectuate this Agreement, including, but not limited to, cooperating in seeking the Court's approval of procedures (including the giving of any required class notice under Federal Rules of Civil Procedure 23(c) and (e)) and securing certification of the Settlement Class for Settlement purposes and the complete and final dismissal with prejudice of the Action as to the Defendants.

33.     Defendants agree to promptly seek any approvals necessary from their respective Boards of Directors and any other approvals that may be necessary to effectuate the terms of this Agreement.

34.     Promptly after the Execution Date of this Agreement, Plaintiffs shall submit to the Court a motion requesting entry of an Order preliminarily approving the Settlement, preliminarily certifying the Settlement Class and authorizing dissemination of notice to the proposed Settlement Class (the "Motion"). The Motion shall include the following: (a) the Proposed Final Judgment and Order of Dismissal attached hereto as Exhibit A and (b) the proposed forms of, method for, and date of dissemination of notice to the Class.

35.     Following preliminary approval of this Agreement and of the proposed forms and plan of notice, Co-Lead Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, cause notice to be provided to the Settlement Class in the manner specified in Plaintiffs' proposed notice plan, or as otherwise deemed sufficient by the Court.  Defendants shall cooperate with Co-Lead Counsel in these efforts, as set forth in the proposed notice plan.

36.     Subject to the Parties' agreement on the terms of the notice plan, Defendants will pay the reasonable costs of notice to the Settlement Class up to a maximum amount of One Hundred Fifty Thousand ($150,000) in United States currency.

37.     Plaintiffs and Defendants shall jointly seek entry of a Final Judgment and Order of Dismissal:

a.      as to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

b.      dismissing the Action with prejudice and without costs as to the Defendants;

c.      finally amending the class certification order entered by the Court under Rule 23(c)(4) of the Federal Rules of Civil Procedure on February 3, 2015 [Dkt. 174] such that the Settlement Class replaces the 23(c)(4) class and is the only class certified in this Action.

d.      reserving to the Court exclusive jurisdiction over the Settlement and this Agreement, including without limitation, the administration and consummation of this Settlement; and

e.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Defendants shall be final and appealable and entered forthwith.

38.     This Agreement shall become effective only upon the occurrence of the Effective Date.

### E.     Release and Discharge of Class Claims

39.     Upon the occurrence of the Effective Date and in consideration of the Commitments and Stipulations provided for in this Agreement, Released Parties shall be completely released, acquitted, and forever discharged from the Released Class Claims as defined above.

40.     The Releasing Parties hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Class Claims.

41.     The Releasing Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Class Claims. Nevertheless, the Releasing Parties shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully,

finally, and forever settled and released any and all Released Class Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Releasing Parties acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Class Claims was separately bargained for and was a key and material element of this Agreement.

F.      **Release and Discharge of Individual Claims**

42.     In addition, upon the occurrence of the Effective Date and in consideration of the Settlement Amount and other Commitments and Stipulations provided for in this Agreement, Released Parties shall be completely released, acquitted, and forever discharged from the Released Individual Claims.

43.     Plaintiffs hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Individual Claims.

44.     Plaintiffs may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Individual Claims. Nevertheless, Plaintiffs shall expressly, fully, finally, and forever settle and release any and all Released Individual Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiffs acknowledge that the inclusion of "Unknown Claims" in the definition of Released Individual Claims was separately bargained for and was a key material element of this Agreement.

G.      **Other Release Provisions**

45.     With respect to any and all Released Class Claims and Released Individual Claims against any and all Released Parties, the Parties stipulate and agree that, by operation of

the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights, and benefits of Cal. Civ. Code § 1542 and any other federal, state, or foreign law, rule, regulation, or common-law doctrine that is similar, comparable, equivalent, or identical to, or that has the effect in whole or in part, of Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

### H.    Mutual Release

46.    As of the Effective Date, the Released Parties shall be deemed to have fully released, acquitted, and forever discharged Plaintiffs and Co-Lead Counsel from any claims, demands, actions, suits, and causes of action of any nature relating to the institution or prosecution of the Action or otherwise related to the Action, except for any action or other proceedings brought to enforce the terms of this Agreement.

### I.    The Settlement

47.    Subject to Court approval, Plaintiffs shall collectively receive Twenty Thousand ($20,000) Dollars in United States currency, plus any interest earned on that amount subsequent to its deposit with the Escrow Agent, to be divided among Plaintiffs in exchange for Plaintiffs releasing the Released Parties from the Released Individual Claims.

48.     Subject to Court approval, Co-Lead Class Counsel shall receive One Million Five Hundred Thousand ($1,500,000) Dollars in United States currency, plus any interest earned on that amount subsequent to its deposit with the Escrow Agent, to cover attorneys' fees and costs incurred in representing Plaintiffs and the Settlement Class Members.

49.     Defendants shall pay or cause to be paid the Settlement Amount by wire transfer to the Escrow Agent within fifteen (15) business days after the Execution Date. Before any wire transfer takes place, Co-Lead Class Counsel shall provide Defendants with information necessary to complete the wire transfer.

50.     Within five (5) business days from the entry of the Final Judgment and Order of Dismissal, Co-Lead Class Counsel may withdraw from the Escrow Account the sum of One Million Five Hundred Thousand Dollars ($1,500,000), plus any interest earned on the amount withdrawn while on deposit with the Escrow Agent, notwithstanding that the Effective Date of the Settlement has not occurred.  If, as a result of any appeal and/or further proceedings in this Action, the Settlement is terminated or rescinded or if for any reason the Effective Date does not occur, Co-Lead Class Counsel shall return to the Escrow Agent all sums withdrawn pursuant to this paragraph.

51.     Other than payment of the Settlement Amount in accordance with the provisions of Paragraphs 47 and 48 above, and payment of the costs of notice in accordance with the provisions of Paragraph 36 above, neither Defendants nor any of the Released Parties shall have any liability, responsibility, or obligation to pay or reimburse any other amounts to any Person, including but not limited to Plaintiffs, Co-Lead Class Counsel, any Settlement Class Member, or any Releasing Parties in connection with, relating to, or arising out of the Action, the Released Class Claims, the Released Individual Claims, or this Settlement.

52.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds are either returned to Defendants pursuant to Paragraph 55 of this Agreement or distributed as approved by the Court.

53.     In return for the Release and Dismissal provided herein, Defendants agree to make certain Commitments (as described below) with respect to promulgation of guidelines and SART membership criteria, amendment of the Challenged Ethics Report, and publication and promotion of agencies on the SART website. Specifically, Defendants make the following Commitments:

a.     No later than the Effective Date of this Agreement, ASRM will amend the Challenged Ethics Report by removing numbered paragraph 3, which states "Total payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate," as well as the following underlined language that appears on page 4 of the Challenged Ethics Report:

> Although there is no consensus on the precise payment that oocyte donors should receive, at this time sums of $5,000 or more require justification and sums above $10,000 are not appropriate. Programs recruiting oocyte donors and those assisting couples who have recruited their own donors should establish a level of compensation that minimizes the possibility of undue inducement of donors and the suggestion that payment is for the oocytes themselves. A recent survey indicates that these sums are in line with the practice of most SART member clinics.

b.     Defendants agree that, subject to the provisions of Paragraph 54(b), any future guidance, advice, or commentary they or any of their various committees, boards, working groups, or the like may offer concerning donor compensation will not set forth any dollar amounts of recommended or required levels or ranges of compensation.   Nothing in this

Agreement shall be deemed to prevent or preclude any individual board member of ASRM or SART, any individual member of ASRM's Ethics Committee or any individual member of any ASRM or SART committee, working group or the like from publicly or privately expressing a personal opinion on the amount of compensation that can or should be paid by any clinic or donor agency for Donor Services, provided that such statements are not made on behalf of ASRM or SART and do not state or suggest that membership in SART is conditioned on adhering to any dollar amounts, limits or ranges of compensation for Donor Services.

c.     SART agrees that, from the Effective Date of this Agreement and continuing indefinitely, it will not require as a condition of membership in SART that any clinic adhere to any limits on dollar amounts to be paid for Donor Services or include any language its website or in any of its advertising or other materials specifying any limits on dollar amounts to be paid for Donor Services.

d.     SART further agrees that, if it chooses to include on its website a list of agencies that follow ASRM practice and ethical guidelines, it will not require, as a condition of listing, that any agency adhere to any limits on dollar amounts to be paid for Donor Services or include on the agency's website or in its advertising or other materials any language specifying any limits on dollar amounts paid for Donor Services.

54.     Notwithstanding these Commitments, the Parties agree to the following Stipulations:

a.      Neither SART nor ASRM is obligated to create any listing of donor agencies that comply with ASRM practice and/or ethical guidelines or reports or to publish any such listing on the ASRM website, SART website, or otherwise.

b.      This Agreement is not intended to, and should not operate to, constrain ASRM, SART, or any of their respective committees, boards, working groups or the like that may now or may hereafter exist from promulgating guidelines advice or commentary on matters of medical practice, ethics or any subject matter that may be appropriate for professional medical societies, including, without limitation, guidance, advice or commentary on matters related to donor compensation, provided that such guidance, advice or commentary does not set any dollar amounts or ranges of recommended or required levels of donor compensation.

c.      The Parties further stipulate, in return for the Release and Dismissal contemplated herein, and subject to the approval of the Court, to the amendment of the Court's order of February 3, 2015 certifying a class under Federal Rule of Civil Procedure 23(c)(4) [Dkt. 174], such that the Settlement Class replaces the 23(c)(4) class and is the only class certified in this Action. The Parties agree to take all steps necessary to effectuate such amendment, including, but not limited to, seeking such amendment under Federal Rule of Civil Procedure 23(c)(1)(C) in Plaintiffs' motions for preliminary and final approval.

**J.      Rescission**

55.      If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court declines to amend the class certification order of February 3, 2015, as set forth above, or if the Court does not enter a Final Judgment and Order of Dismissal substantially similar in all material respects to the Proposed Final Judgment and Order of Dismissal attached as Exhibit A, or if the Court enters the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, such Final Judgment and Order of Dismissal is not affirmed, then the Parties shall each, in their sole discretion, have the option to rescind this Agreement in its entirety and any and all amounts then constituting the Settlement Amount and any portion thereof (including all income earned

thereon) shall be returned forthwith to Defendants. The Parties expressly reserve all of their rights if this Agreement does not become effective or if it is rescinded by Plaintiffs or Defendants pursuant to this Paragraph.

56.     The Parties agree that this Agreement and the Settlement, whether or not it is finally approved and whether or not Plaintiffs or Defendants elect to rescind under Paragraph 55 of this Agreement, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission of or evidence of any violation of any statute or law, or of any liability or wrongdoing by Defendants or by any Released Parties, or the truth of any of the claims or allegations contained in the Class Action Complaints filed in this Action or any other pleading, motion, or other paper filed by Plaintiffs in this Action, and this Agreement and the Settlement shall not be used or offered as evidence thereof.  Notwithstanding the foregoing, this Agreement may be offered and used as evidence in a proceeding to enforce or interpret this Agreement or the Settlement.

**K.     Taxes**

57.     Plaintiffs acknowledge and agree that: (i) Defendants are not providing any tax, accounting, or legal advice, and Defendants do not make any representations regarding tax obligations or consequences related to or arising from this Agreement; (ii) Plaintiffs assume sole liability for all federal, state, and/or local tax obligations or consequences that may arise from or relate to this Agreement, and Plaintiffs will not seek any indemnification from Defendants in regard thereto; and (iii) Plaintiffs have been advised that Defendants will comply with any duties they may have to make reports to the appropriate federal, state, and/or local taxing authorities.

**L.     Miscellaneous**

58.     The Parties agree that the amount paid and the other terms of the settlement were negotiated at arms-length in good faith by the Parties, with the assistance of a nationally-

recognized mediator, Nancy F. Lesser from Pax ADR, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

59.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

60.     The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering all orders relating to matters addressed in this Agreement and enforcing the terms of this Agreement and of the Settlement.

61.     For the purpose of construing or interpreting this Agreement, the Parties agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

62.     This Agreement shall constitute the entire, complete, and integrated agreement between the Parties pertaining to the settlement of the Action and supersedes any and all prior negotiations and agreements, and is not subject to any condition not explicitly provided for in this Agreement itself. All of the Exhibits to this Agreement are material and integral parts of it and are incorporated by reference as if fully set forth herein.  All terms of this Agreement are contractual and not mere recitals. In entering into and executing this Agreement, each of the Parties respectively warrants that it is acting upon its respective independent judgments and upon the advice of its respective counsel, and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Person, other than the warranties and representations expressly made in this Agreement. The terms of this Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other

Persons, including, without limitation, any Settlement Class Members, claiming any interest in the subject matter hereto through any of the Parties hereto.

63.     The terms of this Agreement are not severable, but are interdependent and have been agreed to only as a whole by the Parties.

64.     This Agreement may be modified or amended only by a writing executed by Co-Lead Class Counsel, on behalf of Plaintiffs and the Settlement Class Members, and Defendants' Counsel, on behalf of Defendants.

65.     Nothing in this Agreement constitutes an admission by Defendants as to the merits of the allegations made in the Action, the validity of any defenses that could be or have been asserted by Defendants, or the appropriateness of certification of any class other than the Settlement Class under Fed. R. Civ. P. 23 for purposes of settlement only. This Agreement is without prejudice to the rights of Defendants to: (a) challenge the Court's certification of any class, including the Settlement Class, in the Action should the Agreement not be approved or implemented for any reason; and/or (b) oppose any certification or request for certification in any other proposed or certified class action. The Agreement, and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights, positions, or privileges of Defendants or any other Released Party (except as expressly provided for in this Agreement), and shall not be construed as, or deemed to be, an admission or evidence on the part of Defendants or any Released Party of any violation of any statute, regulation, law, rule, or principle of common law or equity, or of any liability or wrongdoing, or of the truth or merit of any allegations or claims in this Action, and shall not be used, offered, or accepted, directly or indirectly, as evidence of such in this Action or any other action, litigation, arbitration, or other proceeding, and shall have no precedential value; provided, however, that nothing contained

herein shall preclude use of this Agreement in any proceeding to enforce this Agreement or the Final Judgment and Order of Dismissal.

66.     Plaintiffs, for themselves individually and on behalf of each Settlement Class Member, and Defendants agree that neither this Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in the Action.

67.     All terms of this Agreement shall be governed by and interpreted according to the substantive laws of California without regard to its choice-of-law principles.

68.     The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

69.     Each of the Released Parties is intended to be and is a third-party beneficiary of this Agreement and is authorized to enforce the provisions of this Agreement, including, without limitation, the release of the Released Class Claims and the Released Individual Claims against the Released Parties and covenant not to sue the Released Parties, and such other provisions of this Agreement as are applicable to each Released Party.

70.     The Parties hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California, for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement,

including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. If any such dispute arises, the Parties shall attempt to resolve such dispute through mediation before Nancy F. Lesser before raising it with the Court.

71.     This Agreement may be executed in counterparts by or on behalf of the Parties, and a facsimile or .pdf signature delivered by electronic mail or other mutually agreeable electronic communication shall be deemed an original signature for purposes of executing this Agreement.

72.     Plaintiffs and Defendants acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so. Therefore, Plaintiffs and Defendants and their respective counsel agree that they will not seek to set aside any part of this Agreement on the grounds of mistake. Moreover, Plaintiffs and Defendants and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

73.     Any notice or materials to be provided to the Plaintiffs or Co-Lead Class Counsel pursuant to or relating to this Agreement shall be sent to Michael G. McLellan and Ellen Meriwether, at the addresses listed below, and any notice or materials to be provided to Defendants pursuant to or relating to this Agreement shall be sent to William L. Monts III, at the addresses listed below.

74.     Each of the undersigned attorneys warrants and represents that he or she is fully

authorized to enter into the terms and conditions of, and to execute, this Agreement.

*On behalf of Plaintiffs and the*
*Settlement Class:*

ELLEN MERIWETHER
CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
1101 Market Street
Suite 2650
Philadelphia, PA 19107
Telephone: (215) 864-2800
Fax: (215) 864-2810
emeriwether@caffertyclobes.com

DATE: 3/17/16

MICHAEL G. MCLELLAN
FINKELSTEIN THOMPSON LLP
1077 30th Street NW
Suite 150
Washington, DC 20007
Telephone: (202) 337-8000
Fax: (202) 337-8090
mmclellan@finkelsteinthompson.com

DATE: 3/17/16

*On behalf of Defendants:*

WILLIAM L. MONTS III
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-6440
Fax: (202) 637-5910
william.monts@hoganlovells.com

DATE: 3/18/16

# EXHIBIT 2
# SETTLEMENT AGREEMENT (REDLINED)

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Agreement") is made and entered into on January 29, 2016 ("Execution Date"), by and between American Society for Reproductive Medicine ("ASRM") and Society for Assisted Reproductive Technology ("SART") (together, the "Defendants"); Lindsay Kamakahi, Justine Levy, Chelsey Kimmel, and Kristin Wells (collectively, "Plaintiffs"), both individually and on behalf of a Settlement Class (as defined below);

### A.      RECITALS

WHEREAS, Plaintiffs are prosecuting the Action (as defined below) on their own behalf and on behalf of the putative Settlement Class (as defined below);

WHEREAS, Plaintiffs allege that they were injured and/or face threatened loss or damage as a result of Defendants' participation in an unlawful contract, combination, or conspiracy to fix, raise, maintain, or stabilize the price of Donor Services (as defined below) purchased within the United States and its territories in violation of Section 1 of the Sherman Act;

WHEREAS, Defendants deny Plaintiffs' allegations;

WHEREAS, the Court denied Plaintiffs Lindsay Kamakahi's and Justine Levy's request to certify a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and certified a class under Rule 23(c)(4) on February 3, 2015 [Dkt. 174];

WHEREAS, the Court granted Plaintiffs Chelsey Kimmel and Kristin Wells leave to intervene;

WHEREAS, Plaintiffs Chelsey Kimmel and Kristin Wells have filed a motion for certification of a class under Federal Rule of Civil Procedure 23(b)(2) and their motion remains pending;

WHEREAS, arms-length settlement negotiations have taken place between Co-Lead Class Counsel (as defined below) and counsel for Defendants, with the assistance of a nationally-recognized mediator, Nancy F. Lesser from Pax ADR;

WHEREAS, this Agreement has been reached as a result of those negotiations;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Defendants according to the terms set forth below is in the best interests of Plaintiffs and the putative Settlement Class because of the amendment of the Challenged Ethics Report (as defined below), the actions Defendants have agreed to take and not to take as of the Execution Date of this Agreement, and the payment of the Settlement Amount;

WHEREAS this Action will cease as to Defendants as of the Effective Date (as defined below) of this Agreement, except as necessary to enforce the Settlement or this Agreement; and

WHEREAS Defendants, despite their belief that they have good defenses to the claims alleged, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation;

NOW, THEREFORE, in consideration of the mutual promises, covenants, agreements, and releases set forth herein and for other good and valuable consideration, and intending to be legally bound, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed with prejudice as to Defendants and all other Released Parties (as defined below), subject to the approval of the Court on the following terms and conditions.

**B.    DEFINITIONS**

The following terms, as used in this Agreement, have the following meanings:

1.    "Action" means the actions styled *Lindsay Kamakahi and Justine Levy v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology*,

No. 3:11-cv-1781 JCS (N.D. Cal.) and *Chelsey Kimmel and Kristin Wells v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology*, No. 3:11-cv-1781 JCS (N.D. Cal.).

2.       "ASRM Member" means any Person (as defined below) that is a member of ASRM or was a member of ASRM at any time during the Class Period (as defined below).

3.       "Challenged Ethics Report" means the American Society for Reproductive Medicine Ethics Committee Report Vol. 88, No. 22, titled "Financial compensation of oocyte donors," dated August 2007, and any subsequent drafts or versions of such report.

4.       "Class Claims" means the claims of the Settlement Class arising from (1) their donation of oocytes within the United States and its territories during the Class Period and (2) their intention to donate again in the future.

5.       "Co-Lead Class Counsel" for purposes of this Agreement shall refer to the law firms of Finkelstein Thompson LLP, 1077 30th St NW, Washington, D.C., 20007, and Cafferty Clobes Meriwether & Sprengel LLP, 1101 Market St. Suite 2650, Philadelphia, Pennsylvania 19107.

6.       "Class Period" means the period from and including April 12, 2007, to and including the Execution Date of this Agreement.

7.       "Class Representatives" means Chelsey Kimmel and Kristin Wells.

8.        "Court" means the United States District Court for the Northern District of California.

9.       "Defendants" means American Society for Reproductive Medicine ("ASRM") and Society for Assisted Reproductive Technology ("SART").

10.     "Defendants' Counsel" for purposes of this Agreement shall refer to the law firm of Hogan Lovells US LLP, 555 Thirteenth Street N.W., Washington, DC 20004.

11.     "Donor Services" means the supplying of human eggs to be used for assisted fertility and reproductive purposes and any activities engaged in or services provided in connection or association therewith.

12.     "Effective Date" means the first date by which all of the following events have occurred: (1) the Court has entered the Final Judgment and Order of Dismissal (as defined herein); (2) the time for appeal or to seek permission to appeal the Court's approval of this Agreement and entry of the Final Judgment and Order of Dismissal as described in clause (1) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651 shall be taken into account in determining the above-stated times.

13.     "Escrow Agent" means The Huntington National Bank, 1150 First Avenue, Suite 501, King of Prussia, PA  19406.

14.     "Execution Date" means the latest date on which this Agreement is signed by the Parties hereto.

15.     "Final Judgment and Order of Dismissal" means the order of the Court finally approving the Settlement set forth in this Agreement and dismissing the claims of Plaintiffs and all Settlement Class Members against Defendants, which is the same in all material respects to the Proposed Final Judgment and Order of Dismissal attached hereto as Exhibit A or as modified by agreement of the Parties.

16.     "Notice" means the Notice of Proposed Settlement of a Class Action to be provided to the Settlement Class in a manner acceptable to the Parties and approved by the Court.

17.     "Parties" means Plaintiffs and Defendants, collectively.

18.     "Person" means any individual or entity.

19.     "Plaintiffs" means Lindsay Kamakahi, Justine Levy, Chelsey Kimmel, and Kristin Wells and their respective predecessors, successors, agents, representatives, heirs, executors, administrators, and assigns.

20.     "Released Class Claims" means any and all claims, demands, actions, suits, and causes of action of any nature for injunctive, declaratory, or any other form of equitable relief, including, without limitation, costs, expenses, penalties, attorneys' fees—whether class, individual, or otherwise in nature—that the Class Representatives and Settlement Class Members have or ever had, now have, or hereafter can, shall, or may have up to the Effective Date of this Settlement, directly, representatively, derivatively, or in any other capacity against the Released Parties, whether known or unknown, suspected or unsuspected, including "Unknown Claims" as defined below, concerning or relating to the Challenged Ethics Report or compensation paid for Donor Services or based in whole or in part on the facts, occurrences, transactions, or other matters alleged in, or that could have been alleged in, this Action or any subsequent complaint and that arise under and/or relate to any United States federal, state, or local antitrust, unfair competition, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* and the common law. conduct alleged in the Action or the setting of any dollar amounts, limits or ranges of compensation for Donor Services. Released Class Claims do not include any claims for damages or monetary relief, claims for

costs, expenses, penalties or attorneys' fees in connection with suits for damages or monetary relief, or claims involving any negligence, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, or similar claim relating to Donor Services.

21.     "Released Individual Claims" means any and all claims, demands, actions, suits, and causes of action of any nature for damages and any other form of legal or monetary relief and for injunctive, declaratory, and any other form of equitable relief, including, without limitation, costs, expenses, penalties, attorneys' fees—whether on behalf of a class, individual, or otherwise in nature—that Plaintiffs Lindsay Kamakahi, Justine Levy, Chelsey Kimmel and Kristin Wells have or ever had, now have, or hereafter can, shall, or may haveup to the Effective Date of this Settlement, directly, representatively, derivatively, or in any other capacity against the Released Parties, whether known or unknown, suspected or unsuspected, including "Unknown Claims" as defined below, concerning or relating to the Challenged Ethics Report or compensation paid for Donor Services or based in whole or in part on the facts, occurrences, transactions, or other matters alleged in, or that could have been alleged in, this Action or any subsequent complaint and that arise under and/or relate to any United States federal, state, or local antitrust, unfair competition, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. and the common law.conduct alleged in the Action or the setting of any dollar amounts, limits or ranges of compensation for Donor Services.  Released Individual Claims do not include any claims for negligence, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, or similar claim relating to Donor Services.

22.     "Released Parties" includes, and shall refer jointly and severally, individually and collectively, to (1) Defendants, (2) SART-member Fertility Clinics, (3) ASRM members, and (4)

each of their respective past and present predecessors, successors, heirs, executors, administrators, assigns, parents, subsidiaries, affiliates, divisions, departments, officers, directors, employees, agents, attorneys, representatives, insurers, and reinsurers.

23.    "Releasing Parties" shall refer jointly and severally, individually and collectively, to Plaintiffs, Settlement Class Members, their predecessors, successors, agents, representatives, heirs, executors, administrators, and assigns.

24.    "SART-member Fertility Clinic" means any fertility clinic that was, or has been, a member of SART at any point during the Class Period.

25.    "Settlement" means the settlement and related terms, Commitments (as specified in Section I), and Stipulations (as specified in Section I) between the Parties set forth in this Agreement.

26.    "Settlement Amount" means Twenty Thousand Dollars ($20,000) in United States currency in settlement of Plaintiffs' alleged individual damages claims and One Million Five Hundred Thousand Dollars ($1,500,000) in United States currency payable to Co-Lead Class Counsel to cover attorneys' fees and costs associated with their prosecution of the Action.

27.    "Settlement Class" means, for purposes of settlement under this Agreement, all women who sold human egg Donor Services for the purpose of supplying human eggs to be used for assisted fertility and reproductive purposes ("AR Eggs") within the United States and its territories at any time during the time period from April 12, 2007, to the present – and who intend to sell Donor Services in the future – to or through: (1) any clinic that was/is, at the time of the donation, a member of SART; and/or (2) any AR Egg Agency that was/is, at the time of the donation, agreeing to follow the Challenged Ethics Report,

28.     "Settlement Class Member" means a Person who is a member of the Settlement Class.

29.     "Unknown Claims" means any and all Released Class Claims and Released Individual Claims against the Released Parties that a Releasing Party does not know or suspect to exist in his, her, or its favor as of the Effective Date, which if known by the Releasing Party might have affected his, her, or its decision(s) with respect to the Settlement.

### C.      Stipulation to Settlement Class Certification

30.     The parties to this Agreement hereby stipulate solely for purposes of this settlement that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are satisfied in this case, and, subject to Court approval, the Settlement Class (as defined above) shall be certified for Settlement purposes.

31.     The Parties' Agreement as to certification of the Settlement Class is only for purposes of effectuating this Settlement as to the Defendants and for no other purpose. Defendants retain all objections, arguments and defenses with respect to any other request for class certification and reserve all rights to contest class certification if the settlement set forth in this Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Agreement is rescinded as provided herein, or if the settlement set forth in this Agreement otherwise fails to proceed for any other reason. The Parties acknowledge that that there has been no stipulation to a class or certification of a class for any purpose other than effectuating the Settlement, and that, if the Settlement set forth in this Agreement does not receive the Court's final approval, if the Court's final approval is reversed or vacated on appeal, if this Agreement is rescinded as provided herein, or if the Settlement set forth in this Agreement otherwise fails to close for any other reason, then this Agreement as to certification of the Settlement Class becomes null and void *ab initio*, and neither this Agreement nor any other

Settlement-related statement may be cited in support of an argument for certifying a class related to this Action.

### D.    Approval of this Agreement and Dismissal of Action

32.    The Parties shall use all reasonable efforts to effectuate this Agreement, including, but not limited to, cooperating in seeking the Court's approval of procedures (including the giving of any required class notice under Federal Rules of Civil Procedure 23(c) and (e)) and securing certification of the Settlement Class for Settlement purposes and the complete and final dismissal with prejudice of the Action as to the Defendants.

33.    Defendants agree to promptly seek any approvals necessary from their respective Boards of Directors and any other approvals that may be necessary to effectuate the terms of this Agreement.

34.    Promptly after the Execution Date of this Agreement, Plaintiffs shall submit to the Court a motion requesting entry of an Order preliminarily approving the Settlement, preliminarily certifying the Settlement Class and authorizing dissemination of notice to the proposed Settlement Class (the "Motion"). The Motion shall include the following: (a) the Proposed Final Judgment and Order of Dismissal attached hereto as Exhibit A and (b) the proposed forms of, method for, and date of dissemination of notice to the Class.

35.    Following preliminary approval of this Agreement and of the proposed forms and plan of notice, Co-Lead Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, cause notice to be provided to the Settlement Class in the manner specified in Plaintiffs' proposed notice plan, or as otherwise deemed sufficient by the

Court. Defendants shall cooperate with Co-Lead Counsel in these efforts, as set forth in the proposed notice plan.

36.     Subject to the Parties' agreement on the terms of the notice plan, Defendants will pay the reasonable costs of notice to the Settlement Class up to a maximum amount of One Hundred Fifty Thousand ($150,000) in United States currency.

37.     Plaintiffs and Defendants shall jointly seek entry of a Final Judgment and Order of Dismissal:

        a.     as to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        b.     dismissing the Action with prejudice and without costs as to the Defendants;

        c.     finally amending the class certification order entered by the Court under Rule 23(c)(4) of the Federal Rules of Civil Procedure on February 3, 2015 [Dkt. 174] such that the Settlement Class replaces the 23(c)(4) class and is the only class certified in this Action.

        d.     reserving to the Court exclusive jurisdiction over the Settlement and this Agreement, including without limitation, the administration and consummation of this Settlement; and

        e.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Defendants shall be final and appealable and entered forthwith.

38.     This Agreement shall become effective only upon the occurrence of the Effective Date.

    **E.**     **Release and Discharge of Class Claims**

39.     Upon the occurrence of the Effective Date and in consideration of the Commitments and Stipulations provided for in this Agreement, Released Parties shall be completely released, acquitted, and forever discharged from the Released Class Claims as defined above.

40.     The Releasing Parties hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Class Claims.

41.     The Releasing Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Class Claims. Nevertheless, the Releasing Parties shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released any and all Released Class Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Releasing Parties acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Class Claims was separately bargained for and was a key and material element of this Agreement.

### F.     Release and Discharge of Individual Claims

42.     In addition, upon the occurrence of the Effective Date and in consideration of the Settlement Amount and other Commitments and Stipulations provided for in this Agreement, Released Parties shall be completely released, acquitted, and forever discharged from the Released Individual Claims.

43. Plaintiffs hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Individual Claims.

44. Plaintiffs may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Individual Claims. Nevertheless, Plaintiffs shall expressly, fully, finally, and forever settle and release any and all Released Individual Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiffs acknowledge that the inclusion of "Unknown Claims" in the definition of Released Individual Claims was separately bargained for and was a key material element of this Agreement.

G.     Other Release Provisions

45. With respect to any and all Released Class Claims and Released Individual Claims against any and all Released Parties, the Parties stipulate and agree that, by operation of the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights, and benefits of Cal. Civ. Code § 1542 and any other federal, state, or foreign law, rule, regulation, or common-law doctrine that is similar, comparable, equivalent, or identical to, or that has the effect in whole or in part, of Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE**

DEBTOR.

**H.      Mutual Release**

46.      As of the Effective Date, the Released Parties shall be deemed to have fully released, acquitted, and forever discharged Plaintiffs and Co-Lead Counsel from any claims, demands, actions, suits, and causes of action of any nature relating to the institution or prosecution of the Action or otherwise related to the Action, except for any action or other proceedings brought to enforce the terms of this Agreement.

**I.      The Settlement**

47.      Subject to Court approval, Plaintiffs shall collectively receive Twenty Thousand ($20,000) Dollars in United States currency, plus any interest earned on that amount subsequent to its deposit with the Escrow Agent, to be divided among Plaintiffs in exchange for Plaintiffs releasing the Released Parties from the Released Individual Claims.

48.      Subject to Court approval, Co-Lead Class Counsel shall receive One Million Five Hundred Thousand ($1,500,000) Dollars in United States currency, plus any interest earned on that amount subsequent to its deposit with the Escrow Agent, to cover attorneys' fees and costs incurred in representing Plaintiffs and the Settlement Class Members.

49.      Defendants shall pay or cause to be paid the Settlement Amount by wire transfer to the Escrow Agent within fifteen (15) business days after the Execution Date. Before any wire transfer takes place, Co-Lead Class Counsel shall provide Defendants with information necessary to complete the wire transfer.

50.      Within five (5) business days from the entry of the Final Judgment and Order of Dismissal, Co-Lead Class Counsel may withdraw from the Escrow Account the sum of One Million Five Hundred Thousand Dollars ($1,500,000), plus any interest earned on the amount withdrawn while on deposit with the Escrow Agent, notwithstanding that the Effective Date of

the Settlement has not occurred.  If, as a result of any appeal and/or further proceedings in this Action, the Settlement is terminated or rescinded or if for any reason the Effective Date does not occur, Co-Lead Class Counsel shall return to the Escrow Agent all sums withdrawn pursuant to this paragraph.

51.     Other than payment of the Settlement Amount in accordance with the provisions of Paragraphs 47 and 48 above, and payment of the costs of notice in accordance with the provisions of Paragraph 36 above, neither Defendants nor any of the Released Parties shall have any liability, responsibility, or obligation to pay or reimburse any other amounts to any Person, including but not limited to Plaintiffs, Co-Lead Class Counsel, any Settlement Class Member, or any Releasing Parties in connection with, relating to, or arising out of the Action, the Released Class Claims, the Released Individual Claims, or this Settlement.

52.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds are either returned to Defendants pursuant to Paragraph 55 of this Agreement or distributed as approved by the Court.

53.     In return for the Release and Dismissal provided herein, Defendants agree to make certain Commitments (as described below) with respect to promulgation of guidelines and SART membership criteria, amendment of the Challenged Ethics Report, and publication and promotion of agencies on the SART website. Specifically, Defendants make the following Commitments:

        a.      No later than the Effective Date of this Agreement, ASRM will amend the Challenged Ethics Report by removing numbered paragraph 3, which states "Total payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate," as

well as the following underlined language that appears on page 4 of the Challenged Ethics Report:

> Although there is no consensus on the precise payment that oocyte donors should receive, at this time sums of $5,000 or more require justification and sums above $10,000 are not appropriate. Programs recruiting oocyte donors and those assisting couples who have recruited their own donors should establish a level of compensation that minimizes the possibility of undue inducement of donors and the suggestion that payment is for the oocytes themselves. A recent survey indicates that these sums are in line with the practice of most SART member clinics.

b.      Defendants agree that, subject to the provisions of Paragraph 54(b), any future guidance, advice, or commentary they or any of their various committees, ~~board~~boards, working groups, or the like may offer concerning donor compensation will not set forth ~~specific~~any dollar amounts of recommended or required levels or ranges of compensation. Nothing in this Agreement shall be deemed to prevent or preclude any individual board member of ASRM or SART, any individual member of ASRM's Ethics Committee or any individual member of any ASRM or SART committee, working group or the like from publicly or privately expressing ~~an~~a personal opinion on the amount of compensation that can or should be paid by any clinic or donor agency for Donor Services~~.~~, provided that such statements are not made on behalf of ASRM or SART and do not state or suggest that membership in SART is conditioned on adhering to any dollar amounts, limits or ranges of compensation for Donor Services.

c.      SART agrees that, from the Effective Date of this Agreement and continuing indefinitely, it will not require as a condition of membership in SART that any clinic adhere to any limits on dollar amounts to be paid for Donor Services or include any language its website or in any of its advertising or other materials specifying any limits on dollar amounts to be paid for Donor Services.

d.      SART further agrees that, if it chooses to include on its website a list of agencies that follow ASRM practice and ethical guidelines, it will not require, as a condition of listing, that any agency adhere to any limits on dollar amounts to be paid for Donor Services or include on the agency's website or in its advertising or other materials any language specifying any limits on dollar amounts paid for Donor Services.

54.      Notwithstanding these Commitments, the Parties agree to the following Stipulations:

a.       Neither SART nor ASRM is obligated to create any listing of donor agencies that comply with ASRM practice and/or ethical guidelines or reports or to publish any such listing on the ASRM website, SART website, or otherwise.

b.      This Agreement is not intended to, and should not operate to, constrain ASRM, SART, or any of their respective committees, boardboards, working groups, or the like that may now or may hereafter exist from promulgating guidelines, advice, or commentary on matters of medical practice, ethics, or any subject matter that may be appropriate for professional medical societies, including, without limitation, guidance, advice, or commentary on matters related to donor compensation, provided that such guidance, advice, or commentary does not set forth specificany dollar amounts or ranges of recommended or required levels or ranges of donor compensation.

c.      The Parties further stipulate, in return for the Release and Dismissal contemplated herein, and subject to the approval of the Court, to the amendment of the Court's order of February 3, 2015 certifying a class under Federal Rule of Civil Procedure 23(c)(4) [Dkt. 174], such that the Settlement Class replaces the 23(c)(4) class and is the only class certified in this Action. The Parties agree to take all steps necessary to effectuate such amendment,

including, but not limited to, seeking such amendment under Federal Rule of Civil Procedure 23(c)(1)(C) in Plaintiffs' motions for preliminary and final approval.

**J.     Rescission**

55.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court declines to amend the class certification order of February 3, 2015, as set forth above, or if the Court does not enter a Final Judgment and Order of Dismissal substantially similar in all material respects to the Proposed Final Judgment and Order of Dismissal attached as Exhibit A, or if the Court enters the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, such Final Judgment and Order of Dismissal is not affirmed, then the Parties shall each, in their sole discretion, have the option to rescind this Agreement in its entirety and any and all amounts then constituting the Settlement Amount and any portion thereof (including all income earned thereon) shall be returned forthwith to Defendants. The Parties expressly reserve all of their rights if this Agreement does not become effective or if it is rescinded by Plaintiffs or Defendants pursuant to this Paragraph.

56.     The Parties agree that this Agreement and the Settlement, whether or not it is finally approved and whether or not Plaintiffs or Defendants elect to rescind under Paragraph 55 of this Agreement, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission of or evidence of any violation of any statute or law, or of any liability or wrongdoing by Defendants or by any Released Parties, or the truth of any of the claims or allegations contained in the Class Action Complaints filed in this Action or any other pleading, motion, or other paper filed by Plaintiffs in this Action, and this Agreement and the Settlement shall not be used or offered as evidence thereof.  Notwithstanding

the foregoing, this Agreement may be offered and used as evidence in a proceeding to enforce or interpret this Agreement or the Settlement.

### K.    Taxes

57.    Plaintiffs acknowledge and agree that: (i) Defendants are not providing any tax, accounting, or legal advice, and Defendants do not make any representations regarding tax obligations or consequences related to or arising from this Agreement; (ii) Plaintiffs assume sole liability for all federal, state, and/or local tax obligations or consequences that may arise from or relate to this Agreement, and Plaintiffs will not seek any indemnification from Defendants in regard thereto; and (iii) Plaintiffs have been advised that Defendants will comply with any duties they may have to make reports to the appropriate federal, state, and/or local taxing authorities.

### L.    Miscellaneous

58.    The Parties agree that the amount paid and the other terms of the settlement were negotiated at arms-length in good faith by the Parties, with the assistance of a nationally-recognized mediator, Nancy F. Lesser from Pax ADR, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

59.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

60.    The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering all orders relating to matters addressed in this Agreement and enforcing the terms of this Agreement and of the Settlement.

61.    For the purpose of construing or interpreting this Agreement, the Parties agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

62.     This Agreement shall constitute the entire, complete, and integrated agreement between the Parties pertaining to the settlement of the Action and supersedes any and all prior negotiations and agreements, and is not subject to any condition not explicitly provided for in this Agreement itself. All of the Exhibits to this Agreement are material and integral parts of it and are incorporated by reference as if fully set forth herein.  All terms of this Agreement are contractual and not mere recitals. In entering into and executing this Agreement, each of the Parties respectively warrants that it is acting upon its respective independent judgments and upon the advice of its respective counsel, and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Person, other than the warranties and representations expressly made in this Agreement. The terms of this Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons, including, without limitation, any Settlement Class Members, claiming any interest in the subject matter hereto through any of the Parties hereto.

63.     The terms of this Agreement are not severable, but are interdependent and have been agreed to only as a whole by the Parties.

64.     This Agreement may be modified or amended only by a writing executed by Co-Lead Class Counsel, on behalf of Plaintiffs and the Settlement Class Members, and Defendants' Counsel, on behalf of Defendants.

65.     Nothing in this Agreement constitutes an admission by Defendants as to the merits of the allegations made in the Action, the validity of any defenses that could be or have been asserted by Defendants, or the appropriateness of certification of any class other than the Settlement Class under Fed. R. Civ. P. 23 for purposes of settlement only. This Agreement is

without prejudice to the rights of Defendants to: (a) challenge the Court's certification of any class, including the Settlement Class, in the Action should the Agreement not be approved or implemented for any reason; and/or (b) oppose any certification or request for certification in any other proposed or certified class action. The Agreement, and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights, positions, or privileges of Defendants or any other Released Party (except as expressly provided for in this Agreement), and shall not be construed as, or deemed to be, an admission or evidence on the part of Defendants or any Released Party of any violation of any statute, regulation, law, rule, or principle of common law or equity, or of any liability or wrongdoing, or of the truth or merit of any allegations or claims in this Action, and shall not be used, offered, or accepted, directly or indirectly, as evidence of such in this Action or any other action, litigation, arbitration, or other proceeding, and shall have no precedential value; provided, however, that nothing contained herein shall preclude use of this Agreement in any proceeding to enforce this Agreement or the Final Judgment and Order of Dismissal.

66.     Plaintiffs, for themselves individually and on behalf of each Settlement Class Member, and Defendants agree that neither this Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in the Action.

67.     All terms of this Agreement shall be governed by and interpreted according to the substantive laws of California without regard to its choice-of-law principles.

68.     The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent, or

contemporaneous. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

69.     Each of the Released Parties is intended to be and is a third-party beneficiary of this Agreement and is authorized to enforce the provisions of this Agreement, including, without limitation, the release of the Released Class Claims and the Released Individual Claims against the Released Parties and covenant not to sue the Released Parties, and such other provisions of this Agreement as are applicable to each Released Party.

70.     The Parties hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California, for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. If any such dispute arises, the Parties shall attempt to resolve such dispute through mediation before Nancy F. Lesser before raising it with the Court.

71.     This Agreement may be executed in counterparts by or on behalf of the Parties, and a facsimile or .pdf signature delivered by electronic mail or other mutually agreeable electronic communication shall be deemed an original signature for purposes of executing this Agreement.

72.     Plaintiffs and Defendants acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so. Therefore, Plaintiffs and Defendants and their respective counsel agree that they will not seek to set aside any part of this Agreement on the

grounds of mistake. Moreover, Plaintiffs and Defendants and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

73.     Any notice or materials to be provided to the Plaintiffs or Co-Lead Class Counsel pursuant to or relating to this Agreement shall be sent to Michael G. McLellan and Ellen Meriwether, at the addresses listed below, and any notice or materials to be provided to Defendants pursuant to or relating to this Agreement shall be sent to William L. Monts III, at the addresses listed below.

74.     Each of the undersigned attorneys warrants and represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

*On behalf of Plaintiffs and the Settlement Class:*

_____
ELLEN MERIWETHER
CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
1101 Market Street
Suite 2650
Philadelphia, PA 19107
Telephone: (215) 864-2800
Fax: (215) 864-2810
emeriwether@caffertyclobes.com


DATE: _____

*On behalf of Defendants:*

_____
WILLIAM L. MONTS III
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-6440
Fax: (202) 637-5910
william.monts@hoganlovells.com


DATE: _____

_____
MICHAEL G. MCLELLAN
FINKELSTEIN THOMPSON LLP
1077 30th Street NW
Suite 150
Washington, DC 20007
Telephone: (202) 337-8000

# EXHIBIT 3
# MODIFIED NOTICE

# If You Donated Eggs and Intend to Donate Eggs Again

## You Rights May Be Affected by a Proposed Class Action Settlement

### *This Notice is being provided by Order of the U.S. District Court, Northern District of California*

- A proposed settlement has been reached in a class action lawsuit regarding the compensation provided to women who have previously donated their own human eggs for assisted fertility and reproductive services and who intend to donate again in the future. The lawsuit is *Kamakahi et al. v. American Society for Reproductive Medicine; Society for Assisted Reproductive Technology,* Case No. CV-11-1781 (JCS). Under the terms of the Settlement Agreement, the defendants are obligated to make certain changes to their ethical guidance regarding compensation for egg donors.

## What is this lawsuit about?

This class action was brought on behalf of women who donated human eggs for reproductive purposes through fertility clinics and donation agencies that agreed to comply with an ethical report issued by Defendant American Society for Reproductive Medicine ("ASRM") and followed by Defendant Society for Assisted Reproductive Technology ("SART"). The challenged portion of the ethical report states: "[t]otal payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate."  Plaintiffs allege that these challenged compensation guidelines are enforced by Defendants and constitute a horizontal price fixing agreement in violation of Section 1 of the Sherman Act. Defendants disagree that the challenged compensation guidelines are unlawful, and contend that the challenged compensation guidelines are merely unenforced recommendations.

## Why is this a class action?

In a class action, the named plaintiffs bring a suit on behalf of other people who are similarly situated to the plaintiffs.  In this case, the named plaintiffs are Lindsey Kamakahi, Justine Levy, Chelsey Kimmel and Kristin Wells.  Each of the named plaintiffs has donated human eggs though a clinic or agency that allegedly adhered to the challenged compensation guidelines. Named plaintiffs Kimmel and Wells intend to donate eggs again in the future and have been certified as representatives of the Settlement Class.

The Judge overseeing the case originally allowed it to proceed as a class action limited to the issue of whether the compensation guidelines violated the law.  After the parties agreed to a settlement of the case, the Judge amended the original certification order to replace the original class with the Settlement Class.  As described further below, the Settlement Class is made up of women who were members of the original class and who intend to donate in the future, but it is certified under a different provision of Federal Rule of Civil Procedure 23, and allows the parties to  carry out the Settlement Agreement.

## Who is included?

You are a member of the Settlement Class if you:
- Donated eggs for assisted reproduction purposes,
- Within the United States and its territories,
- At any time from April 12, 2007 to the present,

- To or through any clinic that was, at the time of the donation, a member of the Society for Assisted Reproductive Technology ("SART") and/or any egg donation agency that was, at the time of the donation, agreeing to follow the challenged compensation guidelines (a "Complying Agency"), and
- Intend to provide such donor services to or through a SART- member clinic or Complying Agency in the future.

## What does the settlement provide?

The Court has preliminarily certified a Rule 23(b)(2) settlement class consisting of those women who have donated human eggs in the past and intend to donate in the future.  The Settlement Agreement requires the defendants to eliminate the challenged compensation guidelines and refrain from setting similar guidelines in the future.  The Settlement Agreement does not provide any monetary payments to class members and class members retain any rights that they have to sue for damages.  Because important time limits may apply to claims for damages, any class member wishing to pursue a claim for damages should consult a lawyer to prevent a claim for damages from being barred forever by a time limit.  Class Members will, however, release existing claims for injunctive, declaratory, or any other form of equitable relief arising from the conduct alleged in the class action, the setting of any dollar amounts, limits or ranges for donor compensation, or to the challenged compensation guidelines.

Under the terms of the Settlement Agreement, the Defendants have agreed to pay plaintiffs' attorneys $1.5 million to compensate them for their time and expenses in litigating the class action.  Neither the named plaintiffs nor the class members are obligated to pay the attorneys any money.

The Defendants have also agreed to pay the four named plaintiffs a total of $20,000 in return for their release of all claims they have against the Defendants, including claims for damages. The attorneys representing the class will ask the Court to approve payment of $5000 to each of the four named plaintiffs.

All of the terms of the proposed Settlement, including the requirement to eliminate the challenged compensation guidelines, the payments to the attorneys, and the payments to the named plaintiffs are subject to Court approval at a "Final Approval Hearing" which will be explained below.  A copy of the Settlement Agreement can be accessed here [provide link].

The Defendants do not admit liability as part of the Settlement and the Court has not found that the Defendants have violated the law.

## What are my rights?

You cannot exclude yourself from the settlement.  However, you can ask the Court to deny approval by filing an objection.  You can't ask the Court to change the terms of the settlement; the Court can only approve or deny the settlement.  If the Court denies approval, the lawsuit will continue.  If that is what you want to happen, you must object.

You may object to the proposed settlement in writing.  You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number (*Kamakahi et al. v. American Society for Reproductive Medicine; Society for Assisted Reproductive Technology,* Case No. CV-11-1781 (JCS)), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden

Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [insert date].

## When and where will the Court decide whether to approve the settlement?

The Final Approval Hearing will be held on [insert date and time] at [insert address]. The date may change without further notice to the class.  Class members wishing to attend the Final Approval Hearing should check www.eggdonorclassaction.com [insert link] to confirm that the date has not been changed.

## Who represents the Class?

The attorneys representing the Class are:

| | |
|---|---|
| Ellen Meriwether<br>emeriwether@caffertyclobes.com<br>Bryan L. Clobes<br>bclobes@caffertyclobes.com<br>**CAFFERTY CLOBES MERIWETHER<br>    & SPRENGEL LLP**<br>1101 Market Street, Suite 2650<br>Philadelphia, PA 19107<br>Telephone: 215-864-2800<br>Facsimile: 215-864-2810 | Michael G. McLellan<br>mmclellan@finkelsteinthompson.com<br>Douglas G. Thompson<br>dthompson@finkelsteinthompson.com<br>**FINKELSTEIN THOMPSON LLP**<br>1077 30th Street NW, Suite 150<br>Washington, DC 20007<br>Telephone: 202-337-8000<br>Facsimile: 202-337-8090 |

## Where can I get more information?

This notice summarizes the proposed settlement.  For the precise terms and conditions of the settlement, please see the Settlement Agreement available at [insert link], by contacting class counsel identified above, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at *https://ecf.cand.uscourts.gov*, [insert link] or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE
TO INQUIRE ABOUT THIS SETTLEMENT

# EXHIBIT 4
# MODIFIED NOTICE (REDLINED)

# If You Donated Eggs and Intend to Donate Eggs Again

## You Rights May Be Affected by a Proposed Class Action Settlement

*This Notice is being provided by Order of the U.S. District Court, Northern District of California*

- A proposed settlement has been reached in a class action lawsuit regarding the compensation provided to women who have previously donated their own human eggs for assisted fertility and reproductive services and who intend to donate again in the future. The lawsuit is *Kamakahi et al. v. American Society for Reproductive Medicine; Society for Assisted Reproductive Technology,* Case No. CV-11-1781 (JCS). Under the terms of the Settlement Agreement, the defendants are obligated to make certain changes to their ethical guidance regarding compensation for egg donors.

## What is this lawsuit about?

This class action was brought on behalf of women who donated human eggs for reproductive purposes through fertility clinics and donation agencies that agreed to comply with an ethical report issued by Defendant American Society for Reproductive Medicine ("ASRM") and followed by Defendant Society for Assisted Reproductive Technology ("SART"). The challenged portion of the ethical report states: "[t]otal payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate." Plaintiffs allege that these challenged compensation guidelines are enforced by Defendants and constitute a horizontal price fixing agreement in violation of Section 1 of the Sherman Act. Defendants disagree that the challenged compensation guidelines are unlawful, and contend that the challenged compensation guidelines are merely unenforced recommendations.

## Why is this a class action?

In a class action, the named plaintiffs bring a suit on behalf of other people who are similarly situated to the plaintiffs. In this case, the named plaintiffs are Lindsey Kamakahi, Justine Levy, Chelsey Kimmel and Kristin Wells. Each of the named plaintiffs has donated human eggs though a clinic or agency that allegedly adhered to the challenged compensation guidelines. Named plaintiffs Kimmel and Wells intend to donate eggs again in the future and have been certified as representatives of the Settlement Class.

The Judge overseeing the case originally allowed it to proceed as a class action limited to the issue of whether the compensation guidelines violated the law. After the parties agreed to a settlement of the case, the Judge amended the original certification order to replace the original class with the Settlement Class. As described further below, the Settlement Class is made up of women who were members of the original class and who intend to donate in the future, but it is certified under a different provision of Federal Rule of Civil Procedure 23, and allows the parties to carry out the Settlement Agreement.

## Who is included?

You are a member of the Settlement Class if you:
- Donated eggs for assisted reproduction purposes,
- Within the United States and its territories,
- At any time from April 12, 2007 to the present,

- To or through any clinic that was, at the time of the donation, a member of the Society for Assisted Reproductive Technology ("SART") and/or any egg donation agency that was, at the time of the donation, agreeing to follow the challenged compensation guidelines (a "Complying Agency"), and
- Intend to provide such donor services to or through a SART- member clinic or Complying Agency in the future.

## What does the settlement provide?

The Court has preliminarily certified a Rule 23(b)(2) settlement class consisting of those women who have donated human eggs in the past and intend to donate in the future.  The Settlement Agreement requires the defendants to eliminate the challenged compensation guidelines and refrain from setting similar guidelines in the future.  The Settlement Agreement does not provide any monetary payments to class members and class members retain any rights that they have to sue for damages ~~caused~~.  Because important time limits may apply to claims for damages, any class member wishing to pursue a claim for damages should consult a lawyer to prevent a claim for damages from being barred forever by ~~the challenged compensation guidelines~~a time limit. Class Members will, however, release existing claims for injunctive, declaratory, or any other form of equitable relief ~~related to compensation to egg donors that relate~~arising from the conduct alleged in the class action, the setting of any dollar amounts, limits or ranges for donor compensation, or to the challenged compensation guidelines.

Under the terms of the Settlement Agreement, the Defendants have agreed to pay plaintiffs' attorneys $1.5 million to compensate them for their time and expenses in litigating the class action.  Neither the named plaintiffs nor the class members are obligated to pay the attorneys any money.

The Defendants have also agreed to pay the four named plaintiffs a total of $20,000 in return for their release of all claims they have against the Defendants, including claims for damages. The attorneys representing the class will ask the Court to approve payment of $5000 to each of the four named plaintiffs.

All of the terms of the proposed Settlement, including the requirement to eliminate the challenged compensation guidelines, the payments to the attorneys, and the payments to the named plaintiffs are subject to Court approval at a "Final Approval Hearing" which will be explained below.  A copy of the Settlement Agreement can be accessed here [provide link].

The Defendants do not admit liability as part of the Settlement and the Court has not found that the Defendants have violated the law.

## What are my rights?

You cannot exclude yourself from the settlement.  However, you can ask the Court to deny approval by filing an objection.  You can't ask the Court to change the terms of the settlement; the Court can only approve or deny the settlement.  If the Court denies approval, the lawsuit will continue.  If that is what you want to happen, you must object.

You may object to the proposed settlement in writing.  You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number (*Kamakahi et al. v. American Society for Reproductive Medicine; Society for Assisted Reproductive Technology,* Case No. CV-11-1781 (JCS)), (b) be submitted to the Court either by mailing them to the Class Action

Clerk, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [insert date].

### When and where will the Court decide whether to approve the settlement?

The Final Approval Hearing will be held on [insert date and time] at [insert address]. The date may change without further notice to the class.  Class members wishing to attend the Final Approval Hearing should check www.eggdonorclassaction.com [insert link] to confirm that the date has not been changed.

### Who represents the Class?

The attorneys representing the Class are:

| Ellen Meriwether | Michael G. McLellan |
|---|---|
| emeriwether@caffertyclobes.com | mmclellan@finkelsteinthompson.com |
| Bryan L. Clobes | Douglas G. Thompson |
| bclobes@caffertyclobes.com | dthompson@finkelsteinthompson.com |
| **CAFFERTY CLOBES MERIWETHER** | **FINKELSTEIN THOMPSON LLP** |
| **& SPRENGEL LLP** | 1077 30th Street NW, Suite 150 |
| 1101 Market Street, Suite 2650 | Washington, DC 20007 |
| Philadelphia, PA 19107 | Telephone: 202-337-8000 |
| Telephone: 215-864-2800 | Facsimile: 202-337-8090 |
| Facsimile: 215-864-2810 | |

### Where can I get more information?

This notice summarizes the proposed settlement.  For the precise terms and conditions of the settlement, please see the Settlement Agreement available at [insert link], by contacting class counsel identified above, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at *https://ecf.cand.uscourts.gov*, [insert link] or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE
TO INQUIRE ABOUT THIS SETTLEMENT

**Formatted:** German (Germany)

**Formatted:** German (Germany)