Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Michael G. McLellan (admitted *pro hac vice*)
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*Co-Lead Counsel for Plaintiffs*

[Additional Counsel listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY KAMAKAHI and JUSTINE LEVY, individually, and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE and SOCIETY FOR ASSISTED REPRODUCTIVE TECHNOLOGY.<br><br>    Defendants. | Case No.  3:11-CV-1781 JCS<br><br>[~~PROPOSED~~] **FINAL ORDER AND JUDGMENT** |

Settlement Class Representatives, individually and on behalf of the Settlement Class, and Defendants entered into a Stipulation and Agreement of Settlement dated March 17 and 18, 2016 (the "Agreement") to fully and finally resolve the Settlement Class's claims in this action. By order entered March 23, 2016 (the "Preliminary Approval Order"), the Court granted preliminary approval of the Settlement, certified the Settlement Class for purposes of sending notice to the Settlement Class members, and authorized the Plaintiffs to disseminate notice of the Settlement, the fairness hearing, and related matters to the Settlement Class members. Notice has been provided to the Settlement Class members and the required governmental entities under the Class Action Fairness Act, pursuant to the Preliminary Approval Order. The Court held a hearing on the fairness of the Settlement on August 26, 2016.

The Court has considered the Agreement, Plaintiffs' Motion for Final Approval of the Proposed Settlement, the arguments presented at the fairness hearing, and the entire record in this matter,

**AND NOW**, this 26th day of ___August___, 2016, it is hereby **ORDERED** that:

1. The Court has jurisdiction over the subject matter of this litigation.

2. Terms capitalized in this Final Judgment Order and not otherwise defined differently herein have the same meanings as they have in the Agreement.

3. The Preliminary Approval Order outlined the form and manner by which the Plaintiffs would provide the Settlement Class members with notice of the Settlement, the fairness hearing, and related matters. Proof that such notice was effectuated has been filed with the Court. Due and adequate notice has been provided to the Settlement Class members in compliance with Fed. R. Civ. P. 23, and the requirements of due process.

4. The Settlement was entered into by Plaintiffs and Defendants in good faith following an extensive investigation of the facts, and substantial discovery sufficient for experienced plaintiffs' counsel to evaluate the matter. It resulted from vigorous arm's-length negotiations, which were undertaken by counsel with significant experience litigating antitrust class actions.

5. Final approval of the Settlement is hereby granted pursuant to Fed. R. Civ. P. 23(e) because it is fair, reasonable, and adequate to the Settlement Class members. In reaching this conclusion, the Court considered:

[PROPOSED] FINAL ORDER AND JUDGMENT
CASE NO. 11-CV-1781 (JCS)

i.      The strength of Plaintiffs' case;

ii.     The risk, expense, complexity, and likely duration of further litigation;

iii.    The risk of maintaining class action status throughout trial;

iv.     The terms offered in settlement;

v.      The extent of discovery completed and the stage of the proceedings;

vi.     The reaction of Class Members to the Settlement;

vii.    The presence or absence of a government participant; and

viii.   The experience and views of counsel.

6.      The Settlement Class provisionally certified by the Court in its Preliminary Approval Order is certified as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure for purposes of the Settlement, and is comprised of the following:

All women who sold human egg donor services for the purpose of supplying human eggs to be used for assisted fertility and reproductive purposes ("AR Eggs") within the United States and its territories at any time during the time period from April 12, 2007, to the present – and who intend to sell donor services in the future – to or through:  (1) any clinic that was/is, at the time of the donation, a member of SART; and/or (2) any AR Egg Agency that was/is, at the time of the donation, agreeing to follow the Challenged Ethics Report ("Settlement Class").

In finally certifying the Settlement Class, the Court adopts and incorporates herein all findings made under Rule 23 in its Preliminary Approval Order.  The Court further confirms that the class definition of the class certified in this action under Rule 23(c)(4) on February 3, 2015 has been amended to the class definition of the Settlement Class set forth above and the Settlement Class is the only class certified in this action.

7.      In consideration for the release of the claims against them, Defendants shall do the following:

a.      No later than the Effective Date as set forth in the Agreement, ASRM will amend the Challenged Ethics Report by removing numbered paragraph 3, which states "Total payments to donors in excess of $5,000 require justification and sums above $10,000 are not appropriate," as well as

[PROPOSED] FINAL ORDER AND JUDGMENT
CASE NO. 11-CV-1781 (JCS)

the following underlined language that appears on page 4 of the Challenged Ethics Report:

**Although there is no consensus on the precise payment that oocyte donors should receive, at this time sums of $5,000 or more require justification and sums above $10,000 are not appropriate.** Programs recruiting oocyte donors and those assisting couples who have recruited their own donors should establish a level of compensation that minimizes the possibility of undue inducement of donors and the suggestion that payment is for the oocytes themselves. **A recent survey indicates that these sums are in line with the practice of most SART member clinics.**

b.      Subject to paragraph 7(e), any future guidance, advice, or commentary Defendants or any of their various committees, boards, working groups, or the like may offer concerning donor compensation will not set forth any dollar amounts of recommended or required levels or ranges of compensation. Nothing in this Order shall be deemed to prevent or preclude any individual board member of ASRM or SART, any individual member of ASRM's Ethics Committee or any individual member of any ASRM or SART committee, working group or the like from publicly or privately expressing a personal opinion on the amount of compensation that can or should be paid by any clinic or donor agency for Donor Services, provided that such statements are not made on behalf of ASRM or SART and do not state or suggest that membership in SART is conditioned on adhering to any dollar amounts, limits or ranges of compensation for Donor Services.

c.      From the Effective Date and continuing indefinitely, SART will not require as a condition of membership in SART that any clinic adhere to any limits on dollar amounts to be paid for Donor Services or include any language its website or in any of its advertising or other materials specifying any limits on dollar amounts to be paid for Donor Services.

d.      If SART chooses to include on its website a list of agencies that follow ASRM practice and ethical guidelines, it will not require, as a condition of listing, that any agency include on the agency's website or in its advertising or other materials any language specifying any limits on dollar amounts paid for Donor Services; neither SART nor ASRM is obligated to create any listing of donor agencies that comply with ASRM practice and/or ethical guidelines or reports or to publish any such

[PROPOSED] FINAL ORDER AND JUDGMENT
CASE NO. 11-CV-1781 (JCS)

1   listing on the ASRM website, SART website, or otherwise.

2         e.   The Agreement should not operate to constrain ASRM, SART, or any of their

3   respective committees, boards, working groups or the like that may now or may hereafter exist from

4   promulgating guidelines advice or commentary on matters of medical practice, ethics or any subject

5   matter that may be appropriate for professional medical societies, including, without limitation,

6   guidance, advice or commentary on matters related to donor compensation, provided that such guidance,

7   advice or commentary does not set any dollar amounts or ranges of recommended or required levels of

8   donor compensation.

9         8.   Upon the occurrence of the Effective Date and in consideration of the Commitments and

10   Stipulations provided for in the Agreement, Released Parties shall be completely released, acquitted, and

11   forever discharged from the Released Class Claims, as set forth in the Agreement.  The rights of

12   Settlement Class Members to bring suit for damages or monetary relief is explicitly preserved.

13         9.   Upon the occurrence of the Effective Date and in consideration of the Settlement Amount

14   and other Commitments and Stipulations provided for in the Agreement, Released Parties shall be

15   completely released, acquitted, and forever discharged from the Released Individual Claims, as set forth

16   in the Agreement.

17         10.   Upon the occurrence of the Effective Date, the Released Parties shall be deemed to have

18   fully released, acquitted, and forever discharged Plaintiffs and Co-Lead Counsel from any claims,

19   demands, actions, suits, and causes of action of any nature relating to the institution or prosecution of the

20   Action or otherwise related to the Action, as set forth in the Agreement.

21         11.   All of Plaintiffs' claims against Defendants in the Consolidated Class Action Complaint

22   and Demand for Jury Trial are dismissed in accordance with the terms of the Agreement.

23         12.   The Court hereby awards Co-Lead Counsel $1,500,000 in total for attorneys' fees and

24   costs, to be paid in accordance with the terms of the Agreement.

25         13.   The Court further approves payments of $5,000 to each Plaintiff, for a total of $20,000, to

26   be paid in accordance with the terms of the Agreement.

27

28

[PROPOSED] FINAL ORDER AND JUDGMENT
CASE NO. 11-CV-1781 (JCS)

14.     Neither the Agreement, nor any act performed or document executed pursuant to the Agreement, constitutes an admission of wrongdoing by any party in any civil, criminal, administrative, or other proceeding in any jurisdiction.

15.     Without affecting the finality of this Final Judgment Order, the Court retains exclusive jurisdiction over the Settlement and Agreement, including without limitation, the administration, enforcement and consummation of the Settlement.

16.     Pursuant to Fed. R. Civ. P. 54(b), the Court finds that there is no just reason for delay and directs the entry of final judgment.

**IT IS SO ORDERED.**



DATED:  August 26, 2016

_____
Magistrate Judge Joseph C. Spero

- 6 -